[No. B105818. Second Dist., Div. One. Sept. 30, 1997.]

UNETCO INDUSTRIES EXCHANGE, Plaintiff and Respondent, v.
HOMESTEAD INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Crosby, Heafey, Roach & May, James C. Martin, Stacey L. Meltzer, Wright, Robinson, Osthimer & Tatum and Stephen W. Cusick for Defendant and Appellant.

Fletcher & Adair, John R. Fletcher and James R. Coelho for Plaintiff and Respondent.

## OPINION

### SPENCER, P. J.—

#### INTRODUCTION

Appellant Homestead Insurance Company moved to compel an appraisal of two properties for the purpose of determining replacement cost value and to stay trial proceedings until completion of the process. The court granted the motion "only as to the amount of loss as stated in the policy and not the amount of loss covered by the insurance." Appellant appeals from the denial of its motion as to replacement cost. We modify the order to include an appraisal of replacement cost and affirm as modified.

#### STATEMENT OF FACTS

Respondent Unetco Industries Exchange (Unetco) owned two adjacent mansions in Beverly Hills. In August 1993, Unetco obtained earthquake and flood insurance on the mansions from appellant Homestead Insurance Company (Homestead). The mansions sustained significant damage in the January 17, 1994, earthquake, during the Homestead policy coverage period.

The policy provided $6 million in coverage. For earthquake damage, there was a deductible of 10 percent "of the total values, as defined in the valuation clause(s)." The valuation clause provides Homestead "shall not be liable for more than the actual cash value of the property at the time any loss or damage occurs . . . ."

The policy contained an appraisal clause, providing in pertinent part: "If the insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then on the request of the insured or the company, such umpire shall be selected by a judge or a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. . . ."

An endorsement to the insurance policy provides that the term "replacement cost (without deduction for depreciation)" shall be substituted for the

term "actual cash value," wherever the latter term is used in the policy. Homestead's "liability for loss on a replacement cost basis" was limited to the smallest of the following: "A. The amount of the policy applicable to the damaged or destroyed property; [¶] B. The replacement cost of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or [¶] C. The amount actually and necessarily expended in repairing or replacing said property or any part thereof."

Unetco tendered its loss to Homestead on January 20, 1994, and was instructed by Homestead to solicit bids to repair the earthquake damage. Unetco obtained three bids estimating the cost of repair: $948,000, $1,175,100 and $1,890,334. Unetco also obtained three appraisals of the replacement cost of the properties. These were $4,775,000, $4,861,860 and $4,550,000.

Homestead rejected Unetco's repair cost bids and obtained its own repair cost estimates. On April 11, 1994, Kenco Construction Inc., submitted a repair cost estimate of $977,234.79. On June 9, it revised its estimate to $465,434.79. On November 29, it revised its estimate again, to $1,044,591.07.

In December 1994, Unetco submitted a sworn statement in proof of loss. In the statement, it listed the cash value of the properties at time of loss as $4,775,000 and the amount claimed under the policy as $1.3 million.

Also in December 1994, Unetco's attorney wrote to Homestead's adjusters challenging the appraisal of the replacement cost of the properties by Homestead's appraiser, Craig Chatfelter, as unreasonably high. He had appraised the replacement cost as $9,721,000. The significance of replacement cost was the parties' interpretation of the policy as setting the deductible at 10 percent of the replacement cost of the insured properties. The attorney demanded an appraisal pursuant to the appraisal clause of the policy. He also suggested Homestead's reliance on Chatfelter's appraisal and refusal to pay constituted bad faith under Insurance Code section 790.03, subdivision (h).

Homestead's attorney wrote back in January 1995, noting it appeared the parties "have not been able to agree as to the value of the insured policy for purposes of assessing a deductible under the policy." He stated that Homestead was rejecting Unetco's sworn statement in proof of loss, disagreeing with the figures contained therein. He enclosed a supplemental sworn statement in proof of loss to be submitted, a check in the amount of $57,442.72,

representing the undisputed amount owed by Homestead to Unetco, and a partial release and subrogation receipt to be completed. The attorney also invoked the appraisal provision of the insurance policy, nominating as Homestead's appraiser Robert M. Ellis (Ellis) of Construction Technology and Data Corporation. He listed as the issues to be involved in the appraisal the cost to repair the earthquake damage to the properties and the "total replacement cost value of the two properties for purposes of the deductible under the policy." However, as to the latter, he believed it did not "technically fall under the ambit of the appraisal clause, but it is necessary in order to properly resolve the loss." He suggested the parties "enter into an appropriate stipulation in this regard" in order to resolve the matter.

Believing the parties were at an impasse, Unetco filed suit against Homestead in February 1995. Unetco alleged breach of contract, breach of the covenant of good faith and fair dealing, unfair business practices and fraud.

In February 1996, Unetco's attorney wrote to Homestead's attorney regarding appraisal. He indicated Unetco's appraiser, Ron Green, had contacted Ellis in an effort to begin the appraisal process. However, the appraisers needed further instruction as to the scope of the appraisal. Unetco's attorney believed "[t]he only task for the appraisers in the appraisal process is to determine the replacement cost value of the subject properties."

The attorneys met with the appraisers in March 1996 and agreed to reduce to writing the issue to be determined by the appraisers. They had agreed the issue was to be the replacement cost of the properties.

Unetco's attorney wrote to Homestead's attorney in April 1996 regarding Homestead's proposed instructions for the appraisal procedure. He stated that on further examination of the policy, he had concluded that Homestead was not entitled to appraisal of the replacement cost of the properties, but only of the amount of loss.

In early June, the attorneys for the parties spoke, and Homestead's attorney indicated he intended to move for an order compelling appraisal. Unetco's attorney later wrote that this was unnecessary, in that Unetco was interested in completing an appraisal. However, it would reserve its right to challenge Homestead's right to appraisal, in part based upon its position that the policy did not provide a right to appraisal of replacement cost. The attorney also noted Unetco had submitted to Homestead documentation of the amounts expended to repair the properties. Unetco was still waiting to hear whether Homestead would contest these figures.

Homestead's attorney wrote back, indicating that he would be moving for the order to compel appraisal. He also complained that although Unetco had

agreed to allow Homestead's appraiser, Ellis, to inspect the properties, Unetco revoked its agreement when it learned the inspection was to be performed by two of Ellis's employees rather than Ellis himself. He did not believe the appraiser should be precluded from relying on the work of his employees in appraising the property. He also questioned why Unetco had paid more for repairs than cost of repairs estimated in November 1994, based upon which Homestead had made payment to Unetco.

## CONTENTION

Appellant contends the determination of replacement cost falls squarely within the appraisal provision and the parties' dispute over that issue is subject to appraisal as a matter of law. We agree in part.

## DISCUSSION

The issue presented to this court is whether the trial court correctly interpreted the language of the parties' insurance contract. ■ In general, an insurance policy is interpreted in the same manner as any other contract. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; see, e.g., *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) An insurance policy should be interpreted so as to give effect to the mutual intention of the parties. (Civ. Code, § 1636; *Waller, supra*, at p. 18.) This intention should be inferred, if possible, from the language of the policy. (Civ. Code, § 1639; *Waller, supra*, at p. 18.) In interpreting the language of an insurance policy, the words used should be given their plain, ordinary meaning unless the policy clearly indicates the contrary. (Civ. Code, § 1644; *Waller, supra*, at p. 18.) The policy should be interpreted as a whole, with all parts given effect. (Civ. Code, § 1641; *Waller, supra*, at p. 18.)

The language of an insurance policy is ambiguous when it reasonably may be interpreted in two or more ways. (*Waller* v. *Truck Ins. Exchange, supra*, 11 Cal.4th at p. 18; *Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) Where the language is clear and unambiguous, the court will not give it a strained interpretation in order to create an ambiguity. (*Ibid.*; *Pacific Employers Ins. Co.* v. *Superior Court* (1990) 221 Cal.App.3d 1348, 1354 [270 Cal.Rptr. 779].) However, where the policy language is ambiguous, the policy will be interpreted according to the reasonable expectations of the insured. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

■ Arbitration—and similarly appraisal (see Code Civ. Proc., § 1280, subd. (a); *Safeco Ins. Co.* v. *Sharma* (1984) 160 Cal.App.3d 1060, 1063 [207

Cal.Rptr. 104])—is a favored means of dispute resolution. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251]; *Engineers & Architects Assn.* v. *Community Development Dept.* (1994) 30 Cal.App.4th 644, 652 [35 Cal.Rptr.2d 800].) However, "[t]he scope of arbitration [or appraisal] is, of course, a matter of agreement between the parties." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.*, *supra*, at p. 323; cf. *Arista Films, Inc.* v. *Gilford Securities, Inc.* (1996) 43 Cal.App.4th 495, 501 [51 Cal.Rptr.2d 35].) Any limits they place on the scope of arbitration or appraisal must be respected. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.*, *supra*, at p. 323; *Hayes Children Leasing Co.* v. *NCR Corp.* (1995) 37 Cal.App.4th 775, 788 [43 Cal.Rptr.2d 650].) Nonetheless, any "doubts concerning the scope of arbitrable issues [or matters submitted for appraisal must] be resolved in favor of arbitration [or appraisal]." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.*, *supra*, at p. 323; *Hayes Children Leasing Co.*, *supra*, at p. 788.)

In the absence of conflicting extrinsic evidence, interpretation of an insurance policy is a question of law; this court makes an independent determination as to the meaning of the policy. (*Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18.) The determination as to whether a particular matter falls within an appraisal clause is also a question of law, subject to independent review. (Cf. *Arista Films, Inc.* v. *Gilford Securities, Inc.*, *supra*, 43 Cal.App.4th at p. 501; see *Engineers & Architects Assn.* v. *Community Development Dept.*, *supra*, 30 Cal.App.4th at pp. 652-653.)

One of the first questions to be determined is whether the policy at issue is a standard form fire insurance policy as defined in Insurance Code section 2071. If so, interpretation of the policy may be circumscribed by the requirements of that section.

Insurance Code section 102, subdivision (a), provides that "[f]ire insurance includes . . . [i]nsurance against loss by fire, lightning, windstorm, tornado, or earthquake." Clearly, pursuant to this section, earthquake coverage may be included in a fire insurance policy.

There is no similar defining provision for "earthquake insurance"; such insurance is not listed in Insurance Code section 100 as one of the classes of insurance. However, there is a class of insurance entitled "miscellaneous." (*Ibid.*, subd. (20).) "Miscellaneous insurance includes insurance against loss from damage done, directly or indirectly by lightning, windstorm, tornado, *earthquake* . . . and any insurance not included in any of the foregoing classes, and which is a proper subject of insurance." (*Id.*, § 120, italics

added.) The language of section 120 leads to the conclusion that earthquake insurance is miscellaneous insurance, rather than fire insurance. Flood insurance also would be classes as miscellaneous insurance; it is not included in any of the classes listed in section 100.

That the instant policy is miscellaneous insurance rather than fire insurance is supported by the language of Insurance Code section 2071, which sets forth the mandatory (*id.*, § 2070) provisions of a fire insurance policy. One of the provisions is that the policy "insure . . . against all LOSS BY FIRE, LIGHTNING." (*Id.*, § 2071.) In other words, a fire insurance policy must insure against loss by fire and lightning; if it does not, it is not a fire insurance policy. The other perils listed in Insurance Code section 102 may be covered by the policy, but section 2071 provides that such insurance "shall be by endorsement in writing hereon or added hereto."

If an insurance policy insures against one of the other perils which may be covered by a fire insurance policy pursuant to Insurance Code section 102, but not fire and lightning, it is a miscellaneous insurance policy. Insurance Code section 2071 would not apply to it. The policy at issue here specifically excluded fire insurance, stating it was not a standard form fire insurance policy. Therefore, it is a miscellaneous insurance policy, not a fire insurance policy; Insurance Code section 2071 does not apply.

The language of the policy's appraisal clause is clear. It applies to the amount of loss. It provides that if the parties "fail to agree as to the *amount of loss*," the appraisers shall be selected and "shall then appraise the *loss*." (Italics added.) It does not provide for appraisal of the replacement cost for the purpose of determining the deductible should the parties fail to agree as to that figure. The policy favoring arbitration and appraisal notwithstanding, the required appraisal proceedings are limited to those to which the parties have agreed, i.e., appraisal of the loss. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra*, 35 Cal.3d at p. 323; *Hayes Children Leasing Co.* v. *NCR Corp., supra*, 37 Cal.App.4th at p. 788.)

The language of the policy is also clear with respect to the contents of the appraisal. Since the endorsement provides that "replacement cost" is to be substituted in the policy for "actual cash value," the contract read as a whole is susceptible of but one reasonable interpretation—when there is a dispute as to the amount of loss, the insured and the insurer have a right to an independent appraisal of the loss, and a statement as to the replacement cost

of the properties at the time of loss and the amount of loss.[1] These amounts are to be stated separately in the award by the appraisers. One cannot state separately the amount of a replacement cost without making an appraisal thereof.

"Appraisal" is defined as "an act of estimating or evaluating," "a valuation of property by the estimate of an authorized person." To "appraise" is "to set a value on" or "estimate the amount of," "to judge and analyze the worth." An "appraisal clause" is defined as "the provision in fire and certain other insurance policies for a procedure to be followed in determining the amount of loss when the insurer and insured cannot agree." (Webster's New Internat. Dict. (3d ed. 1986) p. 105, col. 3.)

While appraisal generally covers the amount of loss, replacement cost of real property may be appraised, i.e., estimated or evaluated. There are "[t]hree methods for *appraising* real property for tax purposes," one of which is "the cost method (based upon the property's replacement cost less depreciation)." (*Service America Corp.* v. *County of San Diego* (1993) 15 Cal.App.4th 1232, 1236, fn. 2 [19 Cal.Rptr.2d 165], italics added; accord, Cal. Code Regs., tit. 18, § 3; *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354]; *Freeport-McMoran Resource Partners* v. *County of Lake* (1993) 12 Cal.App.4th 634, 642 [16 Cal.Rptr.2d 428].)

For example, in *Conway* v. *Farmers Home Mut. Ins. Co.* (1994) 26 Cal.App.4th 1185, 1188 [31 Cal.Rptr.2d 883], the parties "submitted the amount of the fire loss to a panel of appraisers. The appraisers found the replacement cost of the fire loss was $90,721 but the actual cash value of the property destroyed was $76,279.44." In *GTE Sprint Communications Corp.* v. *County of Alameda* (1994) 26 Cal.App.4th 992, 1000 [32 Cal.Rptr.2d 882], "[t]he appraisers . . . calculated the value of the tangible property in California at its replacement cost." Since a determination of replacement cost may be submitted for appraisal, there is no impediment to its being done here.

Moreover, in view of the endorsement which limits appellant's liability for the loss to the smallest of three figures, including replacement cost and repair cost, it is logical that an appraisal of the loss include appraisal of both the replacement cost and the amount of loss—or cost of repair. In order to make the ultimate determination as to appellant's liability to respondent for the loss, both figures must be determined. Interpreting the policy as a whole,

---

[1]The trial court equated amount of loss with repair cost, with no disagreement by the parties' counsel.

it is clear the parties intended that both figures be subject to appraisal when a dispute arose as to the amount of loss. (Civ. Code, §§ 1636, 1641; *Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18.) The policy must be interpreted in a manner consistent with the parties' expressed intent (Civ. Code, § 1636; *Waller*, *supra*, at p. 18), even though it turned out that in this particular situation the cost of repair is indisputably lower than the replacement cost of the properties.

Quite apart from the parties' dispute as to the replacement cost and deductible, it appears there remained a dispute as to the amount of loss. Specifically, there was a dispute as to "[t]he amount actually and necessarily expended in repairing or replacing" the property. This the trial court found. Appellant therefore was entitled to appraisal of the loss, including both replacement cost and amount of loss.

Appellant also claims it was entitled to a stay of the proceedings pursuant to Code of Civil Procedure section 1281.4. Aside from this bare claim, it makes no argument on the matter. This waives the issue. (*People* v. *Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

The order is modified to provide that the appraisal includes both the replacement cost (without deduction for depreciation) and the amount of loss as stated in the policy. As so modified, the order is affirmed. The parties are to bear their own costs on appeal.

Ortega, J., and Dunn, J.,* concurred.

---

*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.