[No. B138734. Second Dist., Div. Four. Aug. 24, 2001.]

JAY HELLINGER et al., Plaintiffs and Appellants, v.
FARMERS GROUP, INC., et al., Defendants and Respondents.

COUNSEL

Law Offices of James Osborne & Associates and W. James Osborne for Plaintiffs and Appellants.

Peterson, Picker, Chow & Freisleben, Alan J. Freisleben, Todd A. Picker and Robert T. Johnson for Defendant and Respondent Farmers Group, Inc.

Chapin Shea McNitt & Carter, David A. Myers; Horvitz & Levy, Lisa Perrochet and Stephanie Rae Williams for Defendant and Respondent Mid-Century Insurance Company

---

OPINION

**EPSTEIN, J.**—We are asked to decide whether a claim for damages from the Northridge earthquake is time-barred by the one-year limitations provision in an insurance contract. We conclude that Code of Civil Procedure section 340.9 applies and extends the deadline for presenting the claim.[1]

### FACTUAL AND PROCEDURAL SUMMARY

Jay Hellinger owned a home in Los Angeles County which was damaged by the Northridge earthquake of January 17, 1994. He and his brother, Lee Hellinger, lived in the residence. The Hellingers purchased a single homeowners insurance policy from Farmers Insurance Exchange (Farmers), Fire Insurance Exchange, and Mid-Century Insurance Company (Mid-Century). In 1992, the Hellinger brothers purchased a separate earthquake insurance policy for the home from Mid-Century. The earthquake policy provided: "We may not be sued unless there has been full compliance with all the terms of this policy. Suit on or arising out of this policy must be brought within one year after the loss occurs." Before the Northridge earthquake, Lee Hellinger transferred his interest in the residence to his brother, Jay.

Within days of the earthquake, the Hellingers noticed cracks in interior and exterior walls, the driveway, patio, gazebo, and a block wall; a leak near the chimney; and electrical problems with various appliances. Farmers agent Howard Hammer called the Hellingers within a week of the earthquake to ask about the status of their home. Lee Hellinger told Hammer about the damage to the home. After some discussion, Mr. Hammer told Lee Hellinger that he thought the losses would not exceed the deductible and that damages to the gazebo, retaining wall, sidewalk, Jacuzzi, and landscaping were not

---

[1]All statutory references are to this code unless another is indicated.

covered by the policy. Agent Hammer did not report the loss to Farmers nor did he ask an adjuster to inspect the Hellinger home.

In April 1994, the Hellingers hired a contractor to repair the visible damage caused by the earthquake, at a cost of $4,350. In July 1995, while gardening, Lee Hellinger noticed a large crack in the concrete foundation under the soil line. He reported this damage to Mr. Hammer and asked for an inspection.

Farmers sent a claims adjuster to inspect the damage in mid-September 1995. The Hellingers' claim was denied in writing on November 27, 1995, citing the policy clause which requires that suit be brought within one year of the loss.

The Hellingers sued Farmers, Fire Insurance Exchange, and Mid-Century on August 26, 1996. In their original complaint, they alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The second amended complaint alleged causes of action for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and breach of contract. The trial court sustained a demurrer without leave to amend to the second amended complaint on the ground that Farmers and Fire Insurance Exchange were not proper parties since the earthquake policy was separate from the homeowners policy they had issued. The Hellingers were then granted leave to amend to add Farmers as a defendant on an alter ego theory. (The theory was that Mid-Century had no employees and had relied upon Farmers and Fire Insurance Exchange to investigate all Northridge earthquake claims and to develop the practices and procedures for handling those claims.) The third amended complaint, naming Mid-Century and Farmers, is the charging pleading. It alleges causes of action for breach of the covenant of good faith and fair dealing, breach of contract, alter ego liability, and joint venture liability.

Mid-Century and Farmers filed a joint motion for summary judgment, or in the alternative, for summary adjudication. They based their motion on the Hellingers' failure to file their lawsuit within one year of the date of the earthquake, and on the ground that Lee Hellinger no longer had an insurable interest when the earthquake occurred. The Hellingers opposed the motion on the sole ground that they needed a continuance pursuant to section 437c, subdivision (h) to allow completion of outstanding discovery. They pointed out that five discovery motions were then pending before the court.

The trial court granted summary adjudication on the cause of action for breach of the covenant of good faith and fair dealing and on the claim for punitive damages, and continued the hearing on the cause of action for

breach of contract. The court also granted summary adjudication against Lee Hellinger, because he had no insurable interest in the residence.

The Hellingers sought reconsideration, based on a newly obtained sworn statement of a former claims supervisor for Farmers and the recently completed deposition of Lee Hellinger. The trial court denied the motion. The Hellingers then sought a writ of mandate to compel the trial court to grant their request for a continuance of the motion for summary judgment. That petition was denied.

On November 18, 1999, the trial court granted summary adjudication to defendants on the cause of action for breach of contract as to Jay Hellinger. It found the action was untimely under Insurance Code section 2071 and the one-year limitations period contained in the policy. The court entered judgment in favor of Mid-Century and Farmers. The Hellingers' motion for new trial was denied. They filed a timely appeal from the judgment, including the underlying summary adjudication and summary judgment and a costs order against Lee Hellinger. The briefing on appeal is on behalf of Jay Hellinger only with respect to the merits of the summary judgment and summary adjudication; no issue is raised challenging the finding that Lee Hellinger had no insurable interest in the property. Lee Hellinger appeals from the judgment of costs assessed against him, but cites neither authority nor the record in support of his appeal from the award of costs. We regard his appeal as abandoned. (See *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 611 [107 Cal.Rptr.2d 489].) Our references to "plaintiff" in the Discussion portion of this opinion refer to Jay Hellinger.

After the normal briefing on appeal, we asked counsel to address the applicability of section 340.9, which became effective January 1, 2001. That statute revives certain claims arising out of the Northridge earthquake that otherwise are time-barred. Jay Hellinger and Mid-Century filed letter briefs in response to our request.[2]

DISCUSSION

I

Section 340.9 was enacted in 2000. It became effective on January 1, 2001, the usual date for nonurgency legislation enacted in 2000. It provides:

---

[2]Subsequent to the filing of letter briefs in this case, Division Three of this district filed its decision in *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 [109 Cal.Rptr.2d 611]. The court held that section 340.9 applies to the contract limitations period and does not constitute an unconstitutional impairment of contracts. As will appear in our discussion of the issues, we are in full agreement with these conclusions.

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage. [¶] (b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period. [¶] (c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section. [¶] (d) This section shall not apply to either of the following: [¶] (1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section. [¶] (2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." We begin our discussion with the construction of this statute.[3]

A. *Insurance Code section 2071*

 The applicable limitations period in this case is contractual, rather than statutory under Insurance Code section 2071. That statute specifies mandatory provisions for fire insurance policies, including a limitations period of one year from the date of loss, to commence an action on the policy. Plaintiff argues that since the Legislature has the power to revive a claim that is time-barred under a statutory limitations period, "there is no persuasive reason why it would lack the power to alter a limitation period [Ins. Code, § 2071] it has legislatively permitted the insurer to insert in fire insurance policies abrogating the general statute of limitations." That may be true, but it does not resolve the issue in this case.

 Insurance Code section 2071 does not apply because the insurance at issue is a stand-alone policy covering earthquake damage only. It is not a fire

---

[3]Mid-Century argues that plaintiff waived any claim he might have to assert section 340.9 because he did not raise it in his briefing on appeal, even though Mid-Century cited the statute in a footnote in its respondent's brief. Plaintiff discussed the statute and its application in detail in response to our invitation for letter briefing on the issue. Because both plaintiff and Mid-Century have fully briefed and argued the issue, which is a matter of considerable significance, and because the statute was not operative when the case was before the trial court, we elect to consider the merits of the claim. (See *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6 [67 Cal.Rptr.2d 726]; *Lopez v. McMahon* (1988) 205 Cal.App.3d 1510, 1520-1521 [253 Cal.Rptr. 321].)

insurance policy. (See *Unetco Industries Exchange v. Homestead Ins. Co.* (1997) 57 Cal.App.4th 1459, 1466-1467 [67 Cal.Rptr.2d 784] [earthquake policy is not standard form fire insurance policy as defined in Ins. Code, § 2071].) As the *Unetco* court observed, a fire insurance policy must insure against loss by fire and lightning; if it does not, it is not a fire insurance policy. (*Unetco, supra,* at p. 1467.) The earthquake policy in this case specifically excludes coverage for losses caused by fire. The limitations period is strictly contractual under paragraph 10 of the policy.

It may or may not be common for insurers to include a one-year limitations period in earthquake damage riders to fire insurance policies, as well as in stand-alone earthquake policies. The fact that insurers choose to include the one-year limitation in stand-alone earthquake policies does not bring those policies within the ambit of Insurance Code section 2071. For that matter, there is no legal requirement that insurers include the one-year period in homeowners policies that cover a multitude of risks besides fire, so long as it is included for fire coverage.

B. *"Solely Because of the Applicable Statute of Limitations"*

 Section 340.9 subdivision (a) applies "[n]otwithstanding any other provision of law *or contract*" to revive certain claims arising out of damages from the Northridge earthquake which are "barred . . . solely because the applicable *statute* of limitations has or had expired . . . ." (Italics added.) Does this mean that, despite the reference to "any other provision of . . . contract" only the statutory bar is affected? Or does the law apply as well to claims that are barred by the contract limitations period? Arguments are made for each alternative. Our first task is to determine which is correct.

 " 'When uncertainty arises in a question of statutory interpretation, consideration must be given to the consequences that will flow from a particular interpretation. [Citation.] In this regard, it is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences.' " (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 235 [45 Cal.Rptr.2d 207, 902 P.2d 225], quoting *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166 [278 Cal.Rptr. 614, 805 P.2d 873].) Courts properly examine the manifest purpose of the statute as a whole in interpreting its provisions. (*Santa Clara County Local Transportation Authority v. Guardino, supra,* 11 Cal.4th at p. 235 [applied to initiative]; *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 918 [72 Cal.Rptr.2d 856, 952 P.2d 1124] [" ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general

purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' [Citations.]"].) We examine the history and background of the statutory provision in order to ascertain the most reasonable interpretation of the measure. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 29-30 [82 Cal.Rptr.2d 610, 971 P.2d 986].)

■ We begin with the amendment to the bill that added the specific reference to contracts. In his comments to the Senate Judiciary Committee, Senator John Burton, principal author of the enacting measure, Senate Bill No. 1899 (1999-2000 Reg. Sess.), offered an amendment to add the phrase "or contract" to the first sentence of subdivision (a), which we reprise: "Notwithstanding any other provision of law *or contract*, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived . . . ." (§ 340.9, subd. (a), italics added; see also Comments of Sen. Burton to Sen. Com. on Judiciary.) Senator Burton explained: "This . . . amendment is technical in nature, since earthquake policies are written pursuant to form fire policy contained in the Insurance Code." (Comments of Sen. Burton to Sen. Com. on Judiciary.) The amendment did not make a corresponding change to specify a contractual limitations period after the term "statute of limitations." But it cannot reasonably be read to exclude the contractual bar. Otherwise the addition of the phrase "or contract" would have no meaning, and the legislative purpose (which we next discuss) would not be served. We agree with the conclusion reached in *20th Century Ins. Co. v. Superior Court*, *supra*, 90 Cal.App.4th 1247, that the term "statute of limitations" in this context should be understood as generic, applying to all applicable limitations periods.

Whether it is part of a comprehensive homeowners policy or in a stand-alone policy, earthquake coverage does not come within the Insurance Code section 2071 provision requiring a one-year contract limitations period for fire policies. If we were to adopt Mid-Century's interpretation of section 340.9, that it does not apply to contract provisions, most victims of the Northridge earthquake would be unable to claim its benefits because the one-year contract period expired long before the statute was enacted. Surely this is contrary to the legislative intent to provide widespread relief to victims of the Northridge earthquake.[4]

---

[4]In its letter brief, Mid-Century assumes that section 340.9 was intended to apply to contractual limitations periods. Thus, it argues that "the Legislature far overstepped the constitutional line when it enacted section 340.9 reviving contractually barred claims . . . ." And it contends: "The proponents of section 340.9 argued that reviving claims against

The history[5] of Senate Bill No. 1899 is replete with indications of its statutory purpose. The following excerpt from the legislative record is illustrative: "The author introduced this bill to bring needed relief to the victims of the Northridge earthquake. He states that the one-year statute of limitations contained in Insurance Code Section 2071 has unfairly barred victims from being compensated for their losses because many were tragically misled about the extent of damage suffered as a result of the earthquake. [¶] . . . [¶] News accounts have asserted that many of the quake victims have yet to receive full and fair compensation from their insurance companies to cover the costs incurred as a result of the quake. Many victims, the accounts state, have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles. In subsequent years, families have discovered damage that either was ignored or missed by the original claims adjuster, yet some insurers, according to these news accounts, have stonewalled claims, leaving homes, condominiums and apartment buildings in shambles and homeowners without any recourse. [¶] Reflecting this apparent plethora of horror stories faced by many victims of the Northridge earthquake, state Senate leaders recently released market survey reports conducted by the Department of Insurance which reportedly demonstrate that several of the nation's largest insurance companies mishandled hundreds of claims following the Northridge earthquake. The market surveys concluded that the surveyed companies had repeatedly low-balled claims, failed to inform policyholders of their benefits and forced many claimants to sue to get full payment. According to the <u>Los Angeles Times</u>, an analysis of the reports conducted by a consumer watchdog group found that one of the companies failed to properly explain benefits or misled policyholders in over a third of the 825 claims files reviewed in the report. (Ellis, Virginia, 'Reports on Quake Claims Made Public,' <u>Times</u>, June 13, 2000, p. A1). [¶] According to the author, this bill seeks to provide these individuals, who, he asserts, were victimized twice (once by the earthquake and a second time by their insurance companies) with a reasonable 'second chance' to seek redress for their damages." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended July 6, 2000, pp. 1-2.) These concerns apply equally to statutory and contract barred claims.

That certainly is the way it was understood both by the insurance industry and the Legislature. The Senate Rules Committee's analysis of amendments

---

insurers despite the expiration of *both* statutory and contractual suit limitations provisions was necessary because, they claimed, insurers engaged in misleading insureds about the 'nature and extent of the damage to their homes.' [Citation.]" (Italics added.) It was only in oral argument that it took a different position.

[5]We grant Mid-Century's request that we take judicial notice of the legislative history related to the passage of Senate Bill No. 1899. (See *People v. Ansell* (2001) 25 Cal.4th 868, 881, fn. 20 [108 Cal.Rptr.2d 145, 24 P.3d 1174].)

by the Assembly is instructive. It refers to the one-year limitation of Insurance Code section 2071, and to insurance industry opposition: "The American Insurance Association states that, 'This proposal appears to be unconstitutional. The requirement that claims be reported within one year of the loss is based upon provisions of insurance contracts. The California Constitution (Article 1, section 9) provides that "(a) . . . law impairing the obligation of contracts may not be passed." To the degree that SB 1899 attempts to modify the contractual obligations and rights of insurers and policyholders, it appears to violate this clear provision of the Constitution.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, unfinished business analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended July 6, 2000, p. 5.) Similarly, an analysis prepared for the Assembly Committee on the Judiciary includes a discussion of the impairment issue raised by insurance industry opponents of the bill. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 23, 2000, pp. 4-5.)

We conclude that the relief afforded by section 340.9 applies to both contract and statutory limitations periods.

## C. *"Litigated to Finality"*

Subdivision (d)(1) of section 340.9 makes the statute inapplicable to any claim "that has been litigated to finality in any court of competent jurisdiction" before January 1, 2001. Mid-Century argues the statute does not apply because plaintiff's claim had been "litigated to finality" before that date in the Los Angeles Superior Court, which is a court of competent jurisdiction. This is true, according to Mid-Century, because the judgment for the insurers was rendered on November 18, 1999, before the January 1, 2001 effective date of the statute.

The statute does not define "litigated to finality." Mid-Century argues that a trial court judgment, if rendered by a competent court, is sufficient to satisfy the requirements of subdivision (d)(1) of section 340.9. It relies on *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288 [63 Cal.Rptr.2d 74, 935 P.2d 781]. The issue in that case was whether section 377.34, a claim survival statute, applies if the plaintiff was alive when judgment was rendered but died while the appeal was pending. The defendant had cited an earlier version of the statute which applied only when the plaintiff died "before judgment." The defendant argued that "before judgment" meant "before final judgment" and that a judgment is not final until affirmed on appeal or until the time for appeal has passed. (*Sullivan,* at p. 303.) The Supreme Court agreed that one of the meanings of "final judgment" is that a judgment is not final as long as it is subject to direct attack by appeal or by

motion for new trial or to vacate the judgment. (*Ibid.* [examples at fn. 7 at p. 303].) But the court went on to explain that finality on appeal is only one meaning of the phrase, and others may apply, depending on the circumstances. (*Id.* at pp. 303-304.) One of these is that a trial court judgment is final from the moment it is rendered. (*Id.* at p. 304.)

Plaintiff cites *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282 [19 Cal.Rptr.2d 286]. In that case, the court concluded that a judgment creditor of an insured is not entitled to sue a judgment debtor's insurer under Insurance Code section 11580, subdivision (b)(2)[6] until an appeal from the underlying judgment is resolved or the time for appeal has passed. (*McKee,* at p. 283.) In reaching this conclusion, the court examined a statutorily required policy provision that the insurer may not be sued on an underlying judgment until it is "final," in the sense that it was affirmed on appeal or the time for appeal has expired. (*Id.* at p. 287.) In deciding that a judgment is not "final" until then, the court relied on section 1049: " '[A]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied.' " (15 Cal.App.4th at pp. 287-288.) Analysis of this issue under the doctrine of res judicata yields the same result. (*Id.* at pp. 288-289.)

We think it is significant that in enacting section 340.9, the Legislature employed neither the term "final judgment" nor the generic term "judgment" in creating the subdivision (d)(1) exception. Instead, it used the phrase "litigated to finality." We understand this to refer to the final resolution of the matter on appeal, or by passage of the time within which an appeal can be filed. Stated another way, we construe this term to refer to the point in time when the judgment is beyond direct attack. The judgment in this case was entered on December 3, 1999. Plaintiff filed his timely appeal on January 21, 2000. The judgment had not been "litigated to finality" when section 340.9 became effective on January 1, 2001.

In reaching this conclusion, we disagree with a contrary decision by a federal district court in *Campanelli v. Allstate Ins. Co.* (C.D.Cal. 2000) 119 F.Supp.2d 1073. In that case, the court granted a motion for summary judgment to an insurer on the ground that an action by victims of the Northridge earthquake was barred by both contractual and statutory limitations periods. The court concluded that summary judgment constituted a

---

[6]Insurance Code section 11580, subdivision (b)(2) provides: "Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions: [¶] . . . [¶] (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

"final adjudication on the merits" within the meaning of section 340.9. The case cites federal authorities but does not discuss the availability of review through a motion for new trial or appeal. (*Campanelli, supra,* 119 F.Supp.2d at p. 1076.) For the reasons we have stated, and consistent with the principle that curative statutes such as this should be liberally construed (*Kim v. Servosnax, Inc.* (1992) 10 Cal.App.4th 1346, 1356 [13 Cal.Rptr.2d 422]), we decline to follow the district court decision.

## II

Mid-Century argues that section 340.9 violates the contract impairment clauses of both the federal and state Constitutions, which prohibit a law impairing the obligation of contracts. Article I, section 10, clause 1 of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts, . . . " thus making the restriction applicable to state legislation. (See *Lynce v. Mathis* (1997) 519 U.S. 433, 440, fn. 12 [117 S.Ct. 891, 895, 137 L.Ed.2d 63] [contract clause prohibits states from passing retroactive legislation impairing the obligation of contracts].) California Constitution, article I, section 9 is similar. It provides in pertinent part: "A . . . law impairing the obligation of contracts may not be passed."

■ It has been established law for over a century that a legislature may revive a civil claim that is barred by the statute of limitations. The reason is that, in a civil case, there is no constitutional right of repose. (*Campbell v. Holt* (1885) 115 U.S. 620, 628-629 [6 S.Ct. 209, 213-214, 29 L.Ed. 483] [upholding provision reviving civil actions]; *Chase Securities Corp. v. Donaldson* (1945) 325 U.S. 304, 314 [65 S.Ct. 1137, 1142, 89 L.Ed. 1628] [revival of a personal cause of action which did not involve creation of title does not offend due process]; *Liebig v. Superior Court* (1989) 209 Cal.App.3d 828, 830 [257 Cal.Rptr. 574] [§ 340.1]; *Lent v. Doe* (1995) 40 Cal.App.4th 1177, 1183 [47 Cal.Rptr.2d 389] [similar].)

■ This case is different because it turns on a contractual limitations period. Mid-Century's argument is that, to the extent section 340.9 allows a party to proceed on a claim already barred by the contractual provision, it impairs the insurer's contractual rights.

■ The dimensions of the constitutional argument were most recently and fully discussed by our Supreme Court in *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247]. The court observed: " '[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial

declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' [Citations.] If the validity of the measure is 'fairly debatable,' it must be sustained. [Citations.]"

■ The court cited *Exxon Corp. v. Eagerton* (1983) 462 U.S. 176 [103 S.Ct. 2296, 76 L.Ed.2d 497]. That case reviewed a statute that prohibited increases on oil and gas prices even as to sellers with contracts which expressly allowed them. "The [*Eagerton*] decision explained that '[a]lthough the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State "to safeguard the vital interests of its people." [Citations.] This Court has long recognized that a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment. [Citation.]' " (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at p. 828.) This summary is entirely congruent with the Supreme Court's appraisal of the Legislature's power, in limited circumstances and in a circumscribed manner, to invalidate provisions of a contract.

The California cases on contract impairment are firmly rooted in established federal precedent. In a leading case, *Home Bldg. & L. Assn. v. Blaisdell* (1934) 290 U.S. 398 [54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481], the Supreme Court upheld a Minnesota Depression-era statute that empowered trial courts to extend the period of redemption from foreclosure "for such additional time as the court may deem just and equitable." (*Id.* at p. 417, fn. 1 [54 S.Ct. at p. 232].) The *Blaisdell* court ruled that the reserved police power to impair contracts "must be consistent with the fair intent of the constitutional limitation of that power." (*Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. at p. 439 [54 S.Ct. at p. 240].) It concluded: "It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcements of contracts if made necessary by a great public calamity such as fire, flood, or earthquake. [Citation.]" (*Ibid.*) The key holdings in *Blaisdell* are: "(1) The Contract Clause is not an absolute prohibition; contracts are made subject to the state's police power; and, in an emergency, this reserved power may be exercised directly to prevent the strict enforcement of the contract, in order to safeguard the public interest. (2) The exercise of the power must be of a *character appropriate to the emergency* and *reasonable in its conditions*; and the Minnesota law, being reasonable, temporary and limited to the emergency, does not violate either the Contract or the Due Process Clause." (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1083, pp. 656-657.)

The power of the government to enact legislation which impairs a contract also was recognized in *Norman v. B. & O.R. Co.* (1935) 294 U.S. 240 [55

S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352], one of a trio of United States Supreme Court Depression-era cases involving the "gold clause."[7] The court was concerned with the validity of a joint congressional resolution invalidating contractual provisions which required payment of a debt in gold or by a value set by the gold standard. Congress retroactively declared such "gold clauses" to be in violation of public policy, and held that notwithstanding the express contract terms, outstanding debts could be paid in legal tender.

In *Norman* the court rejected the obvious impairment of contract challenge to the legislation. It held that Congress has the power to regulate the monetary system, including the power to invalidate provisions of existing contracts which interfere with the exercise of that authority, and that the gold clauses constituted such an interference and were invalid. The court ruled that "[c]ontracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them." (*Norman v. B. & O.R. Co., supra,* 294 U.S. at pp. 307-308 [55 S.Ct. at p. 416].) The court concluded: "There is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts although previously made, and valid when made, when they interfere with the carrying out of the policy it is free to adopt." (*Id.* at pp. 309-310 [55 S.Ct. at p. 417].)

The Supreme Court refused to second-guess the congressional determination that the gold clauses had to be invalidated as a part of the federal response to the monetary crisis which arose during the Great Depression: "We may inquire whether [Congress's] action is arbitrary or capricious, that is, whether it has reasonable relation to a legitimate end. If it is an appropriate means to such an end, the decisions of the Congress as to the degree of the necessity for the adoption of that means, is final. [Citations.]" (*Norman v. B. & O.R. Co., supra,* 294 U.S. at p. 311 [55 S.Ct. at p. 417].)

The *CalFarm* court applied the analytical framework developed in *Energy Reserves Group v. Kansas Power & Light* (1983) 459 U.S. 400 [103 S.Ct. 697, 74 L.Ed.2d 569]. The court addressed state and federal power in this area, and it articulated a three-factor test for examining the contract impairment issue. (See *Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at pp. 830-831.) "The threshold inquiry is 'whether the state law has, in fact,

---

[7]The other two cases, which involved governmental obligations, are *Perry v. United States* (1935) 294 U.S. 330 [55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335] and *Nortz v. United States* (1935) 294 U.S. 317 [55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346].

operated as a substantial impairment of a contractual relationship.' [Citations.] The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. [Citation.] Total destruction of contractual expectations is not necessary for a finding of substantial impairment. [Citation.] On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. [Citations.] In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. [Citations.]" (*Energy Reserves Group v. Kansas Power & Light, supra,* 459 U.S. at p. 411 [103 S.Ct. at p. 704].)

Once the court has determined that a state regulation constitutes a substantial impairment, it moves to the second step of the analysis: whether the state has "a significant and legitimate public purpose behind the regulation, [citation] such as the remedying of a broad and general social or economic problem. [Citation.] Furthermore, since [*Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. 398] the Court has indicated that the public purpose need not be addressed to an emergency or temporary situation. [Citations.] . . . The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." (*Energy Reserves Group v. Kansas Power & Light, supra,* 459 U.S. at pp. 411-412 [103 S.Ct. at pp. 704-705].)

The third step in the analysis is whether the adjustment of " 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' [Citation.] Unless the State itself is a contracting party [citation] '[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' [Citation.]" (*Energy Reserves Group v. Kansas Power & Light, supra,* 459 U.S. at pp. 412-413 [103 S.Ct. at p. 705], bracketed material in original except omitted citations and fns.)

We proceed to apply this test to the statute to the case before us. In doing so we need not and do not consider the validity of the statute in situations other than the one presented here. Thus, we do not consider the limitation in the exception clause that revives settled claims in cases where the insured was not represented by California counsel (§ 340.9, subd. (d)(2)), as that circumstance is not before us.

A. *Severity of the Impairment*

■ This phase of the analysis involves "assessing the severity of the impairment, since that assessment 'measures the height of the hurdle the

state legislation must clear' [citation] . . . ." (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at p. 830.)

Mid-Century argues the impairment is severe because section 340.9 "grants insureds a new right to claim lapsed contract benefits while wiping out the insurers' existing contractual right to repose from stale claims." It claims this impairment is massive because each of the 600,000 persons or entities who filed earthquake claims would be entitled to bring another claim. It also argues that there are others who may never have submitted a claim, but who will come within section 340.9 as long as they contacted their insurer. Mid-Century argues that insurers will be "practically defenseless to challenge the claims after the passage of time," and cites the "specter of bad faith suits" in adjusting resubmitted claims to argue that "many insurers will be forced to pay skyrocketing amounts to settle what could be meritless claims." It concludes: "Section 340.9 thus presents a virtually strict liability situation for insurers." These arguments greatly overstate the case.

There is nothing before us to support Mid-Century's claim that vast numbers of insureds would be rendered eligible to avail themselves of the section 340.9 extension. The reference to 600,000 persons apparently is to the gross number of claimants. We are concerned with a subset of unknown size: those who were insured but did not settle by written agreement when represented by California counsel and who contacted an insurer's representative before January 1, 2000. Because that date is one year before the effective date of the statute, the size of the subset is severely circumscribed. Thus, it does not apply to an insured who waited until section 340.9 was enacted to contact an insurer's representative. It is certainly no less speculative to posit, as we assume the Legislature did, that many if not most insureds who suffered earthquake damage are satisfied with the treatment they received by their insurer and have no wish to engage in litigation at this point. It also is important to recall that the statute revives the time period in which claims may be brought for one year, and that it does not affect any other defense which the insurers may have.

Mid-Century devotes part of its briefing to the provision applying the extended statute of limitations to settlements not signed on behalf of plaintiff by a California licensed attorney. (§ 340.9, subd. (d)(2).) But, as we have pointed out, that is not an issue in this action.

In *Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d 805, a contract clause challenge was made to Proposition 103, an initiative enacted in 1988 which made fundamental changes in the regulation of automobile and other types of insurance. (48 Cal.3d at p. 812.) The extensive regulation of the insurance

industry was a factor considered by the *Calfarm* court in discussing whether there was an impairment of contract. The court concluded that further regulation of the industry could reasonably be anticipated and that the impairment of contract was "relatively moderate and restrained." (*Id.* at p. 830.)

In applying these principles to this case, we weigh the degree of impairment to determine the magnitude of the public interest required to justify the impairment. (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d at p. 830.) We agree that reviving contract-barred claims constitutes an impairment of contract. But the impairment goes to the remedy for a breach of the insurance contract, rather than to its core provisions. Insurers will still have available all applicable defenses to such revived claims other than the limitations defense.

## B. Public Purpose

As we have discussed, Senate Bill No. 1899 was introduced "to bring needed relief to the victims of the Northridge earthquake. According [to the author, Senator Burton], the one-year statute of limitations that is current law under Insurance Code section 2071 has barred victims from being fairly compensated for their losses. He claims that numerous homeowners and homeowners associations were mislead about the extent of damage done as a result of the earthquake, and that once they learned the truth they were prohibited by the statute from filing a claim" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) as amended May 9, 2000, pp. 2-3.)

We are satisfied that section 340.9 is supported by what the Legislature could reasonably view as significant, compelling, and legitimate state interests. It is within the power of the Legislature to protect California's citizens from improper handling of their earthquake insurance claims. This purpose satisfies the public purpose portion of the constitutional test.

## C. Reasonable and Appropriate Statute

The third step in the analysis is to assess whether the adjustment of " 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' [Citation.] Unless the State itself is a contracting party [citation] '[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' [Citation.]" (*Energy*

*Reserves Group v. Kansas Power & Light, supra,* 459 U.S. at pp. 412-413 [103 S.Ct. at p. 705], fn. omitted.)

Mid-Century argues that section 340.9 is neither reasonable nor necessary to the avowed purpose of the statute. Mid-Century argues the statute is unreasonable because it is overinclusive in that it indiscriminately revives all Northridge earthquake claims, without distinction between: (1) diligent insureds and those who were not; and (2) insurers who committed misconduct and those who did not. Mid-Century also argues the statute is unnecessary because existing law already provides mechanisms for the legal and equitable extension of the contractual limitations period in appropriate circumstances.

We do not agree. As applied to this case, section 340.9 is a reasonable and appropriate statute because it is limited in both time and application. First, to restate the obvious, the statute applies only to damages caused by a specific incident: the Northridge earthquake of 1994. It is operative for a single year. Only insureds who had contacted their insurers before January 1, 2000 (i.e., well before the statute was enacted) are eligible for its benefits. And, the statute does not apply to claims litigated to finality. Applying the deference due a legislative enactment, we conclude that application of the statute to the plaintiff does not impermissibly impair the defendants' contract rights.

### III

Mid-Century also argues that section 340.9 violates its right to due process by destroying a vested contract right to repose of stale claims. In *Campbell v. Holt, supra,* 115 U.S. 620, the Supreme Court found no vested right of repose: "We can see no right which the promisor has in the law which permits him to plead the lapse of time instead of payment, which shall prevent the legislature from repealing that law because its effect is to make him fulfill his honest obligations." (*Id.* at p. 629 [6 S.Ct. at p. 214].) Our discussion of the impairment of contract issue applies as well to the due process claim. (See *Home Bldg. & L. Assn. v. Blaisdell, supra,* 290 U.S. at p. 448 [54 S.Ct. at pp. 243-244]; *Addison v. Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].)

### IV

Finally, Mid-Century argues that even if section 340.9 applies, it revives only plaintiff's contract claim, not his claims for bad faith and punitive damages. This argument is based on the clause limiting the scope of the statute to *"any insurance claim for damages* arising out of the Northridge

earthquake . . . ." (§ 340.9, subd. (a), italics added.) Mid-Century contends that, by this language, the Legislature intended to revive only contract claims.

The problem with this analysis is that the tort causes of action are based on the insurance policy and thus come within section 340.9 because they constitute "any insurance claim for damages arising out of the Northridge earthquake . . . ." " ' "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205.)' " (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371-372 [6 Cal.Rptr.2d 467, 826 P.2d 710]; see also *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400 [97 Cal.Rptr.2d 151, 2 P.3d 1] [scope of duty of good faith and fair dealing depends upon purposes of particular contract because covenant " 'is aimed at making effective the agreement's promises' "].)

The court in *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088 [9 Cal.Rptr.2d 469] explained the nature of tort claims arising from an insurance contract. Whether an insurer has a fiduciary relationship with its insureds is unsettled in California (*id.* at pp. 1095-1096) but "[e]ven assuming a fiduciary-type relationship exists, neither the duty nor the covenant of good faith and fair dealing extends beyond the terms of the insurance contract in force between the parties. . . . The carrier's duty is to deal in good faith and fairly in discharging duties under the contract. [Citations.]" (*Id.* at p. 1096.)

We are satisfied that the claims for bad faith and punitive damages are "insurance claim[s] for damages arising out of the Northridge earthquake" within the meaning of section 340.9.

V

Plaintiff raises other issues in support of his argument that his claim is not barred under the one-year limitations period in the contract. In view of our conclusions with respect to the application of section 340.9 to this litigation, it is not necessary to decide those issues. We do not reach them.

## DISPOSITION

The judgment of the trial court is reversed. Plaintiff Jay Hellinger is to have his costs on appeal.

Vogel (C. S.), P. J., and Curry, J., concurred.

A petition for a rehearing was denied September 14, 2001, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 29, 2002.