[No. C045902. Third Dist. July 12, 2004.]

VINEYARD SPRINGS ESTATES, LLC, Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
SYLVIA WYATT et al., Real Parties in Interest.

634

## Counsel

The Costa Law Firm, Daniel P. Costa and Kathleen T. Rogan for Petitioner.

No appearance for Respondent.

Gerald D. Langle for Real Parties in Interest.

## Opinion

**SIMS, J.**—In this summary judgment case, we hold that a trial court has a mandatory duty, enforceable by mandate, to rule on evidentiary objections that are in proper form.

Defendant Vineyard Springs Estates (Vineyard) petitioned this court for a writ of mandate after the trial court denied Vineyard's motion for summary judgment in the tort action filed by plaintiffs and real parties in interest Ronald Wyatt and Sylvia Wyatt (Wyatt).[1] Vineyard requested a peremptory writ directing the trial court to rule on evidentiary objections raised below on which the trial court failed to rule, even after Vineyard reminded the court of its obligation to rule on them and the court repeatedly promised to do so.

We issued an alternative writ. Wyatt then filed a written return to the writ petition, and Vineyard replied. We thereafter issued an order staying further proceedings in the trial court.

We now discharge the alternative writ and issue a peremptory writ directing the trial court to vacate its order denying summary judgment to Vineyard, to rule on Vineyard's evidentiary objections, and to reconsider the summary judgment motion after so ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

*The complaint*

Wyatt filed an action for premises liability and negligence against Vineyard, the owner of Roseville Square Shopping Center (Roseville Square).[2] Both theories of liability rested on the following allegations:

---

[1] Ronald Wyatt, Sylvia Wyatt's husband, alleges only loss of consortium on his own behalf. We use "Wyatt" hereafter to designate Sylvia Wyatt.

[2] Wyatt also named other defendants who are not parties to this proceeding, including "Roe Security," as to which she alleged negligent hiring and negligent supervision.

On December 11, 2001, as Wyatt was walking from the Roseville Square parking lot into a walkway between stores in the shopping center, one or more adult males assaulted and robbed her, seriously injuring her. Before December 11, 2001, there had been numerous complaints and reports to Vineyard and to the Roseville Police Department (the Department) regarding illegal activities and crimes on the Roseville Square premises committed by adult males, including some who were similar to Wyatt's attackers. Vineyard knew, or in the exercise of reasonable care should have known, that numerous crimes, including assault and battery and strong-arm robbery, had occurred in and about Roseville Square before December 11, 2001. Vineyard failed to take reasonable steps, including the provision of security personnel, to protect Wyatt and the other customers of Roseville Square from such crimes. Vineyard's breach of its duty of care to Wyatt caused her injury.

*The summary judgment motion*

Vineyard moved for summary judgment, asserting primarily that Wyatt could not establish a triable issue of material fact as to duty, breach, or causation, because Vineyard had no knowledge of prior similar crimes occurring at the shopping center. (See *Wiener v. Southcoast Childcare Centers* (2004) 32 Cal.4th 1138 [12 Cal.Rptr.3d 615, 88 P.3d 517]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1190–1191 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 679–680 [25 Cal.Rptr.2d 137, 863 P.2d 207].) In its separate statement of undisputed facts—supported by citation to Wyatt's deposition, her handwritten account of the robbery, the Department's report of the incident, and the declaration of Janet Banglos—Vineyard alleged:

Vineyard acquired Roseville Square from its previous owner on May 16, 2001. Janet Banglos, who has managed Roseville Square on Vineyard's behalf since that date, is unaware of any crimes occurring there, either before or after Vineyard acquired the property, other than the robbery of Wyatt.

According to Wyatt's deposition and her notes about the robbery, the crime occurred approximately 100 yards from her workplace, Park Roseville Senior Community (Park Roseville), which is located behind Roseville Square. Wyatt shopped at Roseville Square at least four times a month during the four to five years she had worked at Park Roseville. She had never experienced any problems or threats at Roseville Square. She had never witnessed or heard about any criminal incidents there. Before the robbery, she did not feel any concern about walking from her workplace to Roseville Square.

After leaving work around 5:00 p.m. on December 11, 2001, Wyatt walked to Roseville Square to buy cards at the Wishing Well Store. It was getting

dark, but the area between Park Roseville and Roseville Square was well lit. Wyatt was carrying her purse, which had a shoulder strap.

As Wyatt approached Wishing Well, she noticed two men standing around talking near KB Toys; a third man, whom she did not initially see, was hiding nearby. The third man suddenly jumped up and yelled at Wyatt: "Give me your purse." As she tried to fend him off and run, he pushed her to the ground, causing her to break her right kneecap. Then he grabbed her purse and ran off with his friends.

None of the men had a weapon or threatened Wyatt with physical harm. The incident was over in a few seconds. No one witnessed it.

### The opposition

Wyatt opposed the motion and requested a continuance to complete discovery. In her separate statement of disputed and undisputed facts, she did not dispute Vineyard's allegation that it did not know of prior similar incidents. She asserted, however, that it was chargeable with knowledge of criminal activity at Roseville Square during the two-year period leading up to December 11, 2001. To support this assertion, Wyatt proffered a declaration by her counsel, Gerald Langle, and a writing titled "Roseville Square—Special Request," for which she sought judicial notice.

Langle declares that he had found "information" on the City of Roseville's Web site about criminal activity "in and around" Roseville Square in the two years preceding December 11, 2001. He had asked the Department's records section for a printout of this information. It provided the writing titled "Roseville Square—Special Request." Based on his investigation, Langle is "informed and believes" that the Department "received numerous reports of criminal acts that occurred, or allegedly occurred, at" Roseville Square, including seven robberies and two "[m]inor assaults," from August 13, 2000, to August 2, 2001. The Department had declined to provide police reports, claiming confidentiality, but Langle would keep trying to get them.

The writing titled "Roseville Square—Special Request" lists 409 alleged criminal incidents dated from August 2, 2000, to December 30, 2001, grouped under the names of various crimes and infractions. The writing does not give the facts of any alleged incident. Some incidents are said to have occurred (or been reported) at Roseville Square, others at other locations whose distance from Roseville Square is not stated. The writing does not show whether the alleged incidents involve crimes reported to the Department, arrests made, or something else. Nor does the writing show who received notice of the alleged incidents.

Wyatt's request for judicial notice cites generally to "Evidence Code Sec. [*sic*] 450 *et seq.*" It does not specify any code section or make any supporting argument.

### Vineyard's reply

Vineyard asserted among other things that Wyatt had failed to establish a triable issue of material fact because her proffered evidence was inadmissible.

Vineyard noted that Wyatt's separate statement had not disputed any of Vineyard's facts. Wyatt had only asserted, relying entirely on inadmissible evidence, that Vineyard should be charged with knowledge of alleged prior similar incidents.

Vineyard raised the following evidentiary objections to the writing titled "Roseville Square—Special Request": (1) Wyatt's counsel "lacks foundation to interpret, authenticate, explain, and/or certify the document." (2) "The document contains inadmissible hearsay." (3) "The document in and of itself is not certified authenticated, and/or constitutes a business record." [*Sic.*] (4) "The document is vague, ambiguous, overbroad and unintelligible." (5) The document is irrelevant to the issues framed by the summary judgment motion. (6) Wyatt's counsel "is not qualified to render opinions with respect to the substance, meaning, information, and/or significance of the document." (7) The document and counsel's declaration "contain[] information which is speculative, conjectural, remote and uncertain."

Vineyard separately objected to Wyatt's request for judicial notice, asserting: (1) The writing "is not authorized or required by law. Evidence Code Sections 450, 451, and 452." (2) It "constitutes hearsay, lacks foundation, is vague and ambiguous, and is irrelevant to the issues framed by" the summary judgment motion.

### Wyatt's additional evidence

After obtaining a continuance, Wyatt presented two further items of evidence: a declaration by Department employee Dee Dee Gunther and a new declaration by Attorney Langle.[3]

---

[3] These items were presented in two successive rounds of briefing. Vineyard filed written evidentiary objections only to counsel's new declaration; it objected orally to Gunther's declaration at the hearing on the tentative ruling on Vineyard's motion. (Cf. Code Civ. Proc., § 437c, subds. (b)(5), (d) [evidentiary objections on summary judgment must be "made at the hearing"]; Cal. Rules of Court, rule 343 [evidentiary objections may be made orally, provided there is a court reporter at the hearing]; *City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 784 [97 Cal.Rptr.2d 140].)

Gunther declares: She is the Department's "Administrative Analyst." Her job duties include compiling "statistical information from the official records" of the Department and responding to "requests for statistics derived from said official records." After Langle requested a "written summary listing reports of crimes occurring within the past few years in and around [Roseville Square]," she conducted an automated search of the Department's records, then compiled and printed the document now proffered by Wyatt. She is informed and believes that to obtain crime reports one must file a civil subpoena which is screened by the Roseville City Attorney, and if the reports are provided all identifying information in them is redacted.

Langle declares that he is now "informed and believe[s]" the following:

When Vineyard acquired Roseville Square in May 2001, it received all of the prior owners' "property management files." (Paragraph 2(a).)

According to a Department crime report[4], on July 2, 2001, at approximately 9:30 a.m., an employee of Sportsmart, a store at Roseville Square, observed two Hispanic males inside the store who had shoplifted there. When he tried to detain them, one struck him in the head with a box of merchandise. The two were later arrested. (Paragraph 2(b).)

According to a Department crime report, on July 20, 2001, at approximately 4:20 p.m., a female clerk on duty at KB Toys, a store at Roseville Square, was the victim of an armed robbery inside the store by a Black male around 34 years old, standing six feet two inches tall and weighing 160 pounds. (Paragraph 2(c).)

According to a Department crime report, on August 2, 2001, at approximately 10:00 p.m., a 45-year-old White female carrying her purse walked out of Priceless Drugs, a store at Roseville Square, to go to her car in the parking lot. A Black male asked for a cigarette, grabbed her purse and pulled it out of her hand, and ran to a car occupied by three other Black males, which drove away. The victim described her assailant as around 20 years old, standing five feet nine or 10 inches tall, and weighing 170 to 180 pounds. (Paragraph 2(d).)

In the incident involving Wyatt (a 52-year-old White female), a Black male, whom she described as around 20 years old, standing five feet eight inches tall, and weighing 130 pounds, spoke to her, then grabbed her purse and pulled it out of her hand. There were several Black males nearby; Wyatt believed they were with the robber. (Paragraph 3.)

---

[4] Wyatt did not produce actual police reports for any of the incidents described in this declaration.

Several groups of persons living near Roseville Square had told Langle of their concern about the growing crime rate in and around the center. (Paragraph 4.)

The previously submitted printout showed that dozens of crimes were reported to have occurred in or near Roseville Square over the two-year period prior to December 11, 2001. (Paragraph 5.)

"The cumulative impact of the foregoing facts is that there is clearly a demonstrable pattern of criminal activities that occurred in or near [Roseville Square] in the two year period immediately prior to December 11, 2001." (Paragraph 6.)

"Thus far" discovery had not produced evidence that any crime mentioned above was reported "*directly*" to Vineyard. However, Wyatt "contend[s]" that Vineyard "had constructive notice of said criminal acts and knew, or with reasonable diligence in its management and supervision of [Roseville Square], should have known, that persons coming into [Roseville Square] to shop in stores located there were in danger of being robbed by one or more of the [B]lack males that were involved in the robberies occurring in [Roseville Square] earlier that year." (Paragraph 7.)

*Evidentiary objections*

Vineyard objected orally to Gunther's declaration at the hearing on the trial court's tentative ruling, stating: "[I]t lacks foundation, [and] she's not the proper person to authenticate the document which she was referring [*sic*]." Or, as counsel also put it: "[S]he has no personal knowledge to [*sic*] the actual incidents that occurred, that . . . there is no foundation."

Vineyard filed written objections to Langle's second declaration as follows:

1. Langle "lacks foundation" to establish the facts set forth in paragraphs 2 through 7 of the declaration.

2. The statements in paragraphs 2 through 7 are inadmissible hearsay.

3. Paragraph 4 is irrelevant.

4. Paragraphs 5, 6, and 7 call for legal conclusions.

5. Paragraph 7 is based on speculation, conjecture, and unsupported inferences.

6. "The entire Declaration assumes facts not in evidence, namely that providing security would have prevented any of these criminal events from occurring."

*The tentative ruling and hearing*

The trial court tentatively denied Vineyard's motion, finding a triable issue of fact as to Vineyard's constructive notice of prior similar incidents. The tentative ruling did not mention Vineyard's evidentiary objections or its objection to Wyatt's request for judicial notice.

At the ensuing hearing, Vineyard's counsel repeatedly pointed out the trial court's failure to rule on the objections and requested a ruling. The court promised at three different times during the hearing that it would provide one.

Vineyard's counsel argued the merits of the objections. She also asserted that if the objections were valid, all of Wyatt's evidence was inadmissible, mandating summary judgment for Vineyard.

Wyatt's counsel, Gerald Langle, asserted that so far as the Department printout was inadequately certified or authenticated as nonhearsay when first offered, the Gunther declaration cured the problem. He also asserted: "[W]e were able to obtain, more recently, the actual crime reports."[5] Finally, he asserted that it was proper for his declaration to be based on information and belief: "We're allowed to do that."

*The final ruling*

The trial court's final ruling reads as follows:

"Defendant Vineyard Springs' Motion for Summary Judgment, heard on December 16, 2003, is denied. There is a triable issue of fact as to whether the robberies that occurred within the five months prior to Plaintiff's attack were sufficient to put Defendant on notice that the premises were dangerous. Such notice, if it exists, would have made Plaintiff's injuries foreseeable such as to create a duty for Defendant to take reasonable steps to prevent them."

Except for inserting the hearing date and omitting the word "constructive" before "notice" in the second sentence, the final ruling repeats the tentative ruling verbatim. Like the tentative ruling, it does not mention, let alone rule on, Vineyard's evidentiary objections or its objection to Wyatt's request for judicial notice.

---

[5] As noted, the record does not show that Wyatt offered any "actual crime reports" in evidence. Langle's second declaration merely purported to describe their contents.

## DISCUSSION

### *The trial court's failure to rule on the evidentiary objections*

Code of Civil Procedure section 437c, subdivision (d) provides in part, "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, *shall set forth admissible evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (Italics added; undesignated statutory references are to the Code of Civil Procedure.)

■ Section 437c repeatedly points out the trial court's duty to weigh and rule on evidentiary objections. Section 437c, subdivision (c), provides in part: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, *except that to which objections have been made and sustained by the court* . . . ." (Italics added.) Section 437c, subdivision (g), provides in part: "Upon the denial of a motion for summary judgment, on the ground that there is a triable issue as to one or more material facts, the court shall, by written or oral order, specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy. This determination shall specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists. Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. *The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists.*" (Italics added.) A trial court cannot faithfully carry out this mandate if it has not considered all objections to proffered evidence and ruled on their merits.

■ In light of the foregoing statutory requirements, it has been correctly held that, when evidentiary objections are in a proper form, a trial court must rule on the objections. (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235–238 [114 Cal.Rptr.2d 151]; *City of Long Beach v. Farmers & Merchants Bank of Long Beach, supra,* 81 Cal.App.4th 780, 784.)

■ It is imperative that a trial court rule on evidentiary objections regardless of whether the motion is denied or granted. A trial court cannot decide whether a motion should be denied or granted until it has first determined what admissible evidence is in play on the motion. Moreover, when a trial court fails to rule on summary judgment evidentiary objections, the objections are ordinarily deemed waived on appeal, and the appellate court will consider the objected to evidence in reviewing the ruling on the

motion. (*Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th 1181, 1186, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207]; cf. *City of Long Beach v. Farmers & Merchants Bank, supra,* 81 Cal.App.4th 780, 784–785.) This is a bitter pill for a party who has tendered valid objections.

■ Here, after promising the parties three times that it would rule on the evidentiary objections, the trial court inexplicably failed to do so. The trial court could not rationally evaluate the current motion without first ruling on the evidentiary objections. The trial court failed in its duty. A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (§ 1086.) Vineyard has no plain, speedy, and adequate remedy; it is headed for trial. We will issue a writ commanding the trial court to vacate its order denying summary judgment, to rule on all evidentiary objections, and to reconsider the summary judgment motion in light of its rulings on the evidentiary objections.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying the summary judgment motion of Vineyard Springs Estates, to rule on all evidentiary objections proffered by defendant Vineyard Springs Estates, and thereafter to reconsider the motion in light of the evidentiary objections. The alternative writ, having served its function, is discharged. The stay of proceedings in the trial court is vacated. Defendant Vineyard Springs Estates shall recover its costs. (Cal. Rules of Court, rule 56.4(a).)

Scotland, P. J., and Morrison, J., concurred.