[No. B178244. Second Dist., Div. Seven. Feb. 15, 2006.]

LINCOLN FOUNTAIN VILLAS HOMEOWNERS ASSOCIATION,
Plaintiff and Appellant, v.
STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Defendant
and Respondent.

**1000**

**COUNSEL**

Loewenthal, Hillshafer & Rosen and Glenn T. Rosen for Plaintiff and Appellant.

Crandall, Wade & Lowe, James L. Crandall, Edwin B. Brown, Michael J. McGuire, Matthew F. Batezel; Robie & Matthai, James R. Robie; LHB Pacific Law Partners and Clarke B. Holland for Defendant and Respondent.

## OPINION

**PERLUSS, P. J.**—Lincoln Fountain Villas Homeowners Association (Homeowners Association) appeals from the judgment entered after the trial court granted summary judgment in favor of State Farm Fire & Casualty Insurance Company (State Farm) in the Homeowners Association's action concerning the adjustment of its property damage losses from the 1994 Northridge earthquake. The Homeowners Association contends evidence a 2001 cost-of-repair estimate was three times larger than the estimate prepared by State Farm in 1994 created triable issues of material fact as to whether State Farm had failed to thoroughly and objectively investigate and evaluate its claim, failed to properly adjust its claim and failed to pay the full policy benefits to which the Homeowners Association was entitled. The Homeowners Association also contends it demonstrated triable issues of fact regarding the propriety of State Farm's method of calculating its loss in 1994. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Homeowners Association's Earthquake Coverage and Northridge Earthquake Damage Claim*

Prior to the January 17, 1994 Northridge earthquake, State Farm issued a condominium association policy with an endorsement for earthquake coverage to the Homeowners Association insuring a 16-unit condominium building located at 848 Lincoln Boulevard, Santa Monica. The policy in effect from July 1, 1993, to July 1, 1994, had a limit for coverage for damage caused by the earthquake of $2,209,693 with a 10 percent deductible ($220,969).

The condominium complex was damaged by the Northridge earthquake. By late February 1994 the Homeowners Association had submitted a claim to State Farm for damage to the building and common areas of the complex. In March 1994 a structural damage appraiser and a State Farm claim representative inspected the condominium complex to view the earthquake damage. An initial statement of loss for the Homeowner Association's claim was prepared, which determined the damage to the condominium complex was below the $220,969 deductible. (State Farm's initial evaluation indicated only $90,388.77 in estimated damages.) Accordingly, by letter dated March 23, 1994, State Farm advised the Homeowners Association it would make no payment on its earthquake damage claim.

The Homeowners Association hired Wagner, Hohns & Inglis (WHI), an architectural and engineering consulting firm, to prepare its own report regarding damage to the condominium complex from the Northridge earthquake. On July 23, 1994, the Homeowners Association provided State Farm

with WHI's report, estimating earthquake damages of $314,274.06, which included approximately $90,000 to repair the interiors of condominium units. On August 2, 1994, State Farm retained Pacific Gold Coast Construction Co. (Pacific) to prepare a "per-line damage estimate" of the earthquake damage to the Lincoln Fountain Villas complex. On August 29, 1994, Pacific submitted a damage estimate to State Farm totaling $327,456.56, slightly more than the estimate provided by WHI. State Farm's claim file does not indicate State Farm ever sent Pacific's estimate to the Homeowners Association.

Following its receipt of the Pacific estimate, State Farm met with WHI representatives on behalf of the Homeowners Association. State Farm and WHI ultimately agreed to $296,585.95 as the cost to repair all earthquake damage to the condominium complex (including reimbursement of $1,484.75 for temporary repairs), a sum that was subsequently increased by several hundred dollars for various minor matters. On September 30, 1994, the Homeowners Association was paid $32,777.53—the modified damage figure agreed to by WHI and State Farm less the 10 percent deductible and without the estimated sum for contractor overhead and profit, which State Farm advised the Homeowners Association would be recoverable if the Homeowners Association provided a signed contract with a contractor.

The Homeowners Association retained McEachern Company, Inc., to repair earthquake damage to the condominium building's exterior and common areas as well as to correct a pre-earthquake construction defect. (McEachern was not asked by the Homeowners Association to make any repairs to the interiors of individual units.) McEachern was paid a total of $128,132.69, including overhead and profit for the work it completed. On September 25, 1995, the Homeowners Association wrote its members to announce, "The earthquake repairs to our building are now complete." The September 25, 1995 letter also explained, "Considering the amount of work done, the high quality of the repairs and the fact that several longstanding problems that preceded the earthquake were addressed in the course of the repair work, we as owners have faired [*sic*] quite well."

### 2. *The Homeowners Association's Complaint for Breach of Contract and Insurance Bad Faith*

The Homeowners Association filed a complaint against State Farm on April 20, 2001, for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Business and Professions Code section 17200 et seq. On June 8, 2001, the Homeowners Association filed a first amended complaint asserting only claims for breach of contract and breach of the covenant of good faith and fair dealing. The first amended complaint, which seeks both compensatory and punitive damages, alleges State Farm failed to

investigate properly the Homeowners Association's claim of earthquake damage, failed to evaluate and adjust the claim objectively and failed to pay the full cost to repair the damage caused to the condominium complex by the Northridge earthquake.

### 3. *State Farm's Motion for Summary Judgment*

On March 26, 2004, State Farm moved for summary judgment or in the alternative summary adjudication. In its moving papers State Farm argued its policy obligates it to pay its insured only the amount necessary to repair earthquake damage with equivalent construction or the amount actually spent to repair or replace the damaged property, whichever is less, and it had in fact paid the Homeowners Association everything it was due under the insurance contract: The Homeowners Association spent $128,132.69 to repair the exterior and common areas of the condominium complex and $1,484.75 for temporary repairs; those two amounts plus the $90,897.18 estimated by WHI for interior unit repairs totaled less than the $220,969 deductible. Accordingly, the Homeowners Association was entitled to no further benefits and had actually obtained a windfall by virtue of State Farm's payment of $32,777.53 on September 30, 1994.

### 4. *The Homeowners Association's Opposition to the Summary Judgment Motion*

The Homeowners Association filed opposition papers on June 11, 2004, asserting triable issues of material fact exist regarding the adequacy of State Farm's investigation and evaluation of its earthquake damage claim—factual issues necessary for resolution of both its breach of contract and bad faith causes of action. According to the Homeowners Association, based on the evaluation and report of consultants it has retained, State Farm failed to identify or did not adequately identify a wide range of damage (listed in both its memorandum of points and authorities and its separate statement) to the Lincoln Fountain Villas condominium complex caused by the Northridge earthquake. The Homeowners Association also stated its consultants estimate complete repair of the earthquake damage to the complex will cost $967,842.46. As evidentiary support for these assertions, the Homeowners Association cited in its separate statement to portions of the deposition of Ruth Mittleman, a vice-president of the Homeowners Association, taken on December 12, 2001 (attached as exhibit E to the compendium of exhibits filed in support of the Homeowners Association's opposition to State Farm's motion),[1] and to paragraph 8 of the declaration of Glenn T. Rosen, the Homeowners Association's counsel.

---

[1] Although the record on appeal contains a two-page document entitled "Plaintiff's Compendium of Exhibits Filed in Support of Opposition to Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues," which identifies five exhibits (lettered "A"

Paragraph 8 of the Rosen declaration describes in general terms the consultants' reports referred to in the Homeowners Association's opposition papers but does not attach copies of those reports or provide any detailed information about the consultants' work. "Consultants retained by Plaintiff have prepared reports and estimates regarding the nature and cost of repair for the Association's earthquake damages in the amount of $967,842.46, an amount that is more than three times greater than the sum State Farm agreed to in 1994. However, based on the contentiousness of this litigation, Plaintiff has not yet provided State Farm with its experts' reports and estimates and will not do so unless and until there is an agreement that such will be protected by Cal. Evid. §§ 1119 and 1152 or until production of the reports is required pursuant to Code of Civil Procedure section 2034. However, Plaintiff has described certain of the unrepaired items in its responses to interrogatories provided to defendant."

### 5. State Farm's Reply in Support of Summary Judgment and Objection to the Homeowners Association's Evidence

State Farm filed a reply memorandum and response to the Homeowners Association's separate statement of undisputed facts on June 18, 2004, one week before the scheduled hearing date. State Farm concurrently filed objections to paragraph 8 of the Rosen declaration on the grounds it is "vague, ambiguous, lacks foundation, contains hearsay statements, misstates the evidence and is irrelevant." In particular, State Farm objected that Rosen had not established that "1) he or his consultants are qualified to determine earthquake damage from damage caused by some other source, 2) that he or his consultants knew the condition of the property immediately prior to the earthquake, or 3) that he or his consults [*sic*] knew the condition of the property after the earthquake." In addition, State Farm objected the declaration contains impermissible hearsay evidence as to the findings of others, citing Evidence Code section 1200.

---

through "E") apparently submitted by the Homeowners Association to the trial court, none of the purportedly attached exhibits—including the Mittleman deposition transcript—is part of the record before us. It is axiomatic it is the appellant's responsibility to provide an adequate record on appeal. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932] [to overcome presumption on appeal that an appealed judgment or order is presumed correct, appellant must provide adequate record demonstrating error]; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [84 Cal.Rptr.2d 73] [burden on appellant to provide accurate record on appeal to demonstrate error; failure to do so "precludes adequate review and results in affirmance of the trial court's determination"]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) ¶ 4:43, p. 4-10.1 [appellate record inadequate when it "appears to show *any* need for *speculation or inference* in determining whether error occurred"].)

### 6. *The Trial Court's Ruling on the Motion for Summary Judgment*

The court heard oral argument on State Farm's motion on June 25, 2004, and thereafter granted the motion. "Plaintiff hired and paid $128,132.69 to do all the earthquake repairs as well as other non-earthquake work. Plaintiff advised the association members by letter on September 25, 1995 that the earthquake repairs were complete. Even though State Farm paid plaintiff $32,777.53, plaintiff had the work done within the $220,000 deductible. Under the circumstances, State Farm paid more than they owed, not less." The trial court did not rule on State Farm's objections to paragraph 8 of the Rosen declaration.

Judgment was entered on July 1, 2004, in favor of State Farm. Notice of entry of judgment was served on September 16, 2004. The Homeowners Association filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; Code Civ. Proc., § 437c, subd. (c).)

### 2. *Code of Civil Procedure Section 340.9 Serves Only to Eliminate Certain Time Limitation Defenses*

The theme of both the Homeowners Association's opposition to summary judgment in the trial court and its appellate briefs is that the Legislature's adoption of Code of Civil Procedure section 340.9 (section 340.9), effective January 1, 2001, obligated insurers like State Farm to investigate and adjust new Northridge earthquake damage claims presented in 2001 without regard to actions the insurers may have taken with respect to claims relating to the same property originally presented in 1994. Accordingly the Homeowners Association contends State Farm's payment to it in 1994 cannot as a matter of law support summary judgment.

The Homeowners Association substantially overstates the scope and effect of section 340.9, which simply revives certain time-barred claims for policy benefits against insurers for losses caused by the January 17, 1994 Northridge earthquake and provides a cause of action on such a claim may be

commenced within one year of the statute's January 1, 2001 effective date.[2] The statute was enacted specifically to obviate the adverse impact the one-year limitations period was having on the ability of many insureds to obtain compensation from their insurance companies for property damage caused by the Northridge earthquake: The legislative history of the statute indicates the author introduced the bill because the one-year limitations period " 'has unfairly barred victims [of the Northridge earthquake] from being compensated for their losses because many were tragically misled [by their insurers or representatives thereof] about the extent of damage suffered as a result of the earthquake.' " (*Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049, 1058 [111 Cal.Rptr.2d 268].) According to the statute's proponents, " '[T]housands of people who suffered damage to their homes did not receive the benefit of their insurance contracts because of the insurance companies' conduct. . . . [A]mple evidence exists to show that insurers handling Northridge earthquake claims engaged in a systematic program of misleading consumers about the nature and extent of damage to their homes. Later, when it became clear that the problems were indeed significant, . . . the insurers simply refused to pay claims on the basis that the claims had become time-barred.' " (*20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1267 [109 Cal.Rptr.2d 611].)

■ Section 340.9 has been held to revive claims against insurers for breach of contract and breach of the implied covenant of good faith and fair dealing, which are based on the contract of insurance, but not claims for fraud, which do not rest on the insurers' failure to perform under the insurance policy. (*20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at pp. 1279–1281; *Hellinger v. Farmers Group, Inc., supra,* 91 Cal.App.4th at pp. 1067–1068.) Moreover, section 340.9 does not impose renewed or additional duties on insurers (see *Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 857–858 [24 Cal.Rptr.3d 427]) and does not preclude them from using other available defenses in lawsuits initiated by their insured. (*Id.* at p. 858 ["Section 340.9 did nothing more than reopen the filing window, for a one-year period, to those *otherwise viable* cases that had become time barred."]; *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 82 [115 Cal.Rptr.2d 3] [under § 340.9 "insurers retain all other available defenses, losing only the absolute limitations bar"]; *Hellinger,* at pp. 1065–1066 [§ 340.9 "revives the time period in which claims may be brought for one year,

---

[2] The statute revives Northridge earthquake claims that otherwise would be time-barred in cases in which "an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential . . . earthquake damage." (§ 340.9, subd. (a).) The statute does not apply to "[a]ny claim that has been litigated to finality in any court of competent jurisdiction prior to [January 1, 2001]" or to "[a]ny written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." (§ 340.9, subd. (d).)

and . . . does not affect any other defense which the insurers may have"; "[i]nsurers will still have available all applicable defenses to such revived claims other than the limitations defense"].)

State Farm did not assert a time limitation defense as a ground for summary judgment. Accordingly, section 340.9 is irrelevant to our review of the trial court's order granting State Farm's motion. (See *Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th at pp. 858–859.)

### 3. *The Trial Court Properly Granted Summary Judgment*

#### a. *State Farm satisfied its initial burden of demonstrating the Homeowners Association could not establish necessary elements of its causes of action*

Under the terms of the Homeowners Association's policy with State Farm, the Homeowners Association was entitled to be paid either the actual cash value or the replacement cost of property lost or damaged by the Northridge earthquake. Payment based on replacement cost (without deduction for depreciation) will not be made until the lost or damaged property is actually repaired or replaced; and the sum paid will not exceed the amount actually spent for the repairs or replacement of the property.[3]

If the insured initially elects to have its loss settled on an actual cash value basis and then makes repairs, the insured may apply for and receive additional payment on a replacement cost basis if the cost of necessary repairs is greater than the actual cash value payment. (The policy states the insured must notify State Farm of its intent to make an additional claim on the replacement cost basis within 180 days of the loss.) Of course, if the actual cost to repair is less than the actual cash value payment previously received, the insured is not entitled to any additional payment.

The undisputed facts before the trial court on summary judgment established that in 1994 State Farm and WHI, as the representative of the

---

[3] Section 1, paragraph 2 ("valuation") of the policy provides, "The value of covered property will be determined at: [¶] (a) replacement cost, without deduction for depreciation, as of the time of loss . . . but: [¶] (1) you may make a claim for loss covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss; [¶] . . . [¶] (3) we will not pay more for loss in any one occurrence on a replacement cost basis than the least of: [¶] . . . [¶] (b) the cost to replace the lost or damaged property on the same premises with other property of comparable material and quality that can be used for the same purpose; or [¶] (c) the amount you actually spend that is necessary to repair or replace the lost or damaged property."

Homeowners Association, agreed to a replacement-cost valuation for the damage to the condominium complex (a sum that did not include any deduction for depreciation) and State Farm then paid the Homeowners Association the agreed-upon replacement cost less the applicable deductible and unincurred contractor's overhead and profit. The agreed-upon figure included approximately $90,000 for repairs to individual condominium units. Thereafter, the Homeowners Association hired a contractor to repair the condominium building's exterior and common areas; that repair work, including overhead and profit, was completed for substantially less than the amount to which State Farm and WHI had agreed. The Homeowners Association wrote its members in September 1995 announcing, "The earthquake repairs to our building are now complete." State Farm did not hear again from the Homeowners Association until this litigation.

This evidence is sufficient to satisfy State Farm's initial burden on summary judgment as to the claims for both breach of contract and breach of the implied covenant of good faith and fair dealing: All parties involved in 1994 in the adjustment of the claim agreed to the amount of damage and its cost of repair. State Farm paid the Homeowners Association for all earthquake damage found by State Farm and claimed by the Homeowners Association and its consulting architects and engineers. Because the Homeowners Association spent less to repair the insured property than the agreed-upon estimate and payment (even considering that State Farm withheld overhead and profit), based on the evidence submitted with the moving papers, State Farm does not owe further policy benefits. In addition, because State Farm satisfied its initial burden of establishing it did not breach the insurance policy in 1994, absent evidence from the Homeowners Association creating a triable issue of material fact, the bad faith cause of action necessarily fails as well. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619] ["Absent th[e] contractual right [to policy benefits], the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' [Citation.]"]; see *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246] ["Where benefits are withheld for proper cause, there is no breach of the implied covenant"].)

    b.  *The Homeowners Association failed to present competent evidence creating a triable issue of fact regarding additional, uncorrected earthquake damage*

Because State Farm made a prima facie showing the Homeowners Association could not prove either breach of contract or breach of the implied covenant of good faith and fair dealing, its initial burden on summary judgment, the burden shifted to the Homeowners Association to demonstrate,

"by responsive separate statement and admissible evidence, that triable issue[s] of fact exist." (*Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th at p. 856; see Code Civ. Proc., § 437c, subd. (p)(2); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].) In its opposition the Homeowners Association presented three arguments: First, by failing to investigate the Homeowners Association's newly presented earthquake damage information, State Farm breached its insurance contract and committed bad faith; second, the Homeowners Association's current repair estimate, which is approximately three times the amount of the parties' 1994 agreed-upon replacement cost, creates a triable issue of material fact regarding both the Homeowners Association's entitlement to additional policy benefits and the adequacy of State Farm's initial adjustment of the loss; and third, State Farm used an impermissible methodology in 1994 to calculate the actual cash value of the damage to the Homeowners Association's property.

■   The Homeowners Association's first argument regarding State Farm's failure to investigate its new earthquake damage information is based on its misunderstanding of the scope of section 340.9, discussed above. Subsequently discovered evidence of earthquake damage may or may not support a claim an insurer's initial investigation and adjustment of a claim were deficient, but it does not impose on the insurer a new duty to investigate. (See *Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th at pp. 857–858; *Hellinger v. Farmers Group, Inc., supra,* 91 Cal.App.4th at p. 1066; *Bialo v. Western Mutual Ins. Co., supra,* 95 Cal.App.4th at p. 82.)

The Homeowners Association's second argument is predicated on damage repair estimates totaling nearly $1 million purportedly prepared by litigation consultants who conducted inspections of the condominium complex's common areas and unit interiors prior to the filing of the lawsuit. However, no consultants' reports or estimates were presented to the trial court; the sole evidence proffered to support the assertion significant earthquake damage not identified by State Farm or WHI in 1994 has been discovered at the condominium complex was the declaration of the Homeowners Association's trial counsel, who stated the consultants had estimated the cost to repair earthquake damage was $967,842.46 but who provided no details regarding the scope of the inspections, the nature of the additional repairs required (or even if they were additional) or the method by which the cost of repairs had been determined, let alone the names of the consultants or their background or experience in evaluating earthquake damage claims or construction costs.

Trial counsel's testimony that "[c]onsultants retained by Plaintiff have prepared reports and estimates regarding the nature and cost of repair for the Association's earthquake damages in the amount of $967,842.46," without more, is simply insufficient to create a triable issue of material fact regarding

the Homeowners Association's entitlement to additional policy benefits or the adequacy of State Farm's 1994 investigation and adjustment of the Homeowners Association's claims. (See *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 [78 Cal.Rptr.2d 122] ["an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment"]; *People v. Bassett* (1968) 69 Cal.2d 122, 148 [70 Cal.Rptr. 193, 443 P.2d 777] ["[w]hen the foundation of an expert's testimony is determined to be inadequate as a matter of law, we are not bound by an apparent conflict in the evidence created by his bare conclusions"].)[4]

The Homeowners Association's final argument—that State Farm incorrectly determined the actual cash value of its loss by using impermissible depreciation calculations and improperly withheld contractor's overhead and profit from its payment to the Homeowners Association—ignores the undisputed fact its representative WHI negotiated with State Farm and ultimately agreed on behalf of the Homeowners Association to a replacement-cost valuation for the damage to the condominium complex (a sum that did not include any deduction for depreciation). Moreover, any impropriety in the withholding of amounts WHI estimated for contractor overhead and profit was effectively mooted by the Homeowners Association's ability to retain a contractor who not only repaired the condominium building's exterior and common areas but also corrected a pre-earthquake construction defect for considerably less than the State Farm-WHI agreed-upon figure (even after overhead and profit were excluded). As the trial court observed, at the end of

---

[4] As discussed, State Farm objected on several grounds to paragraph 8 of the Rosen declaration, which contained the only evidentiary reference to the reports and repair estimates of the litigation consultants purportedly retained by the Homeowners Association. The trial court should have, but for some reason did not, rule on those objections, one or more of which appear to have been well taken. (See *Vineyard Springs Estates v. Superior Court* (2004) 120 Cal.App.4th 633, 642 [15 Cal.Rptr.3d 587] ["when evidentiary objections are in a proper form, a trial court must rule on the objections" before determining summary judgment motion].) As a general rule, on appeal from an order granting summary judgment the reviewing court may consider any objected-to evidence in the absence of a ruling in the trial court. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186–1187, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 655 [24 Cal.Rptr.3d 619].) Nonetheless, it is our responsibility in reviewing an order granting summary judgment to independently determine the effect of the evidence submitted. (See *Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th at p. 856.) Accordingly, although we accept paragraph 8 of the Rosen declaration as part of the record to be considered in determining whether a triable issue of material fact exists, its multiple deficiencies as an expert opinion require the conclusion that, as a matter of law, it is insufficient to defeat summary judgment.

the day State Farm paid more to the Homeowners Association than it owed under the insurance contract, not less.

## DISPOSITION

The judgment is affirmed. State Farm is to recover its costs on appeal.

Woods, J., and Zelon, J., concurred.