Filed 8/22/22 Robyn v. DeBert CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KATHRYN ROBYN, | H049049 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 21CV00343) |
| v. | |
| CHARLENE DEBERT, | |
| Defendant and Appellant. | |

Plaintiff Kathryn Robyn obtained a civil harassment restraining order (Code Civ. Proc., § 527.6)[1] against her neighbor, defendant Charlene DeBert. DeBert appeals, arguing that the facts before the trial court did not justify issuance of a permanent restraining order, and that the absence of certain videos from the appellate record denies DeBert a meaningful appeal. Finding no reversible error, we affirm.

## I. Factual and Procedural Background[2]

On February 11, 2021, Robyn filed a petition for a civil harassment restraining order against DeBert, her neighbor in an apartment complex in Soquel. The petition alleged that DeBert had "yelled at, spoken rudely to, called names, and video recorded [Robyn], [her] husband, and [her] children." Robyn elaborated that DeBert had intentionally parked her vehicle in a fire lane blocking one of the garages. Because of

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

[2] We summarize the facts in the light most favorable to the judgment. (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405.)

this, Robyn put up a no parking sign. During one incident, DeBert kicked over the sign. Robyn then put it back up. DeBert then kicked the sign again, yelling in Robyn's face and continuing to kick the sign. Robyn attempted to put the sign back up, but DeBert kicked it, injuring Robyn's feet and hands. Robyn then picked up DeBert's "2 Liter liquor bottle [that] she had set on the ground." DeBert grabbed Robyn's left arm and "yanked on it as she yelled" at Robyn. Robyn stated, " 'I'm moving your property just like you are moving my sign.' " Robyn pulled her arm away and "tossed [the] 2 Liter whiskey bottle gently into the grass." Robyn then called the Santa Cruz County Sheriff's Office. The responding sheriff's deputy took statements, but indicated that DeBert was justified in " 'physically restrain[ing]' " Robyn because she had grabbed DeBert's liquor bottle.

Robyn's petition listed additional incidents. One time, DeBert parked her vehicle to block a neighbor's garage. That neighbor asked Robyn for help. Robyn asked DeBert to move the vehicle, but DeBert refused. The sheriff's office was called. The responding sheriff's deputy asked DeBert to move, and DeBert "moved 1 foot [but] refused to move [fully] out of the way." The sheriff's deputy guided the neighbor out of the garage. At another incident, DeBert parked her car "within inches of [Robyn's] vehicle, blocking [her] in." DeBert had "30ft of space in front of her vehicle where she could have parked, not blocking [Robyn] in." Robyn also described four additional incidents where DeBert parked her vehicle so close to Robyn's that she was unable to move. Finally, Robyn described an incident when DeBert sat in her car in front of Robyn's garage "and began loudly narrating while she filmed [Robyn]." Robyn asked DeBert to " 'stop recording me and my children inside my private garage.' "

On February 16, 2021, based on the petition, the trial court issued a temporary restraining order and set the matter for a hearing.

DeBert filed a response denying the allegations in the petition. DeBert argued that the issue boiled down to "DeBert parking a car," and it was "[n]ot clear how

2

parking a car, in a designated parking area justifies a harassment restraining order." DeBert asserted that Robyn would "park [her] car very close to DeBert's car" and then ask DeBert to move her car. DeBert also claimed that the reason Robyn made an issue of her parking "is that Ms DeBert is gay." She elaborated that Robyn "demands that DeBert listen to [Robyn's] homosexual fantasies," and that Robyn and her husband "impose[] their need to talk about their gay fantasies on DeBert . . . ." Finally, DeBert asserted she had never threatened Robyn or her husband "or any of the other apartment Dweller gang, that [Robyn] has now organized . . . ."

On March 2, 2021, the trial court held a hearing. Robyn testified that although parking was "one of the issues," DeBert had "used parking as . . . [a] way to mess with us," in addition to "verbal, videotaping, slanderous comments, name calling, pushing past me in the laundry room, things like that." Robyn explained that DeBert would often park in such a way as to make "it difficult—very difficult to get out." When DeBert saw Robyn, she would often call Robyn "a crazy bitch and crazy motherfuckers," and would say other "rude, negative, or mean [things] about [Robyn] or even about [her] children." On one specific occasion, Robyn was doing laundry, when DeBert walked in and "pushed past" her and started making comments like, " 'I'm allowed to be here,' and stuff like that." Robyn left the laundry room and sat outside, waiting for DeBert to finish.

Robyn also described an incident when she was sitting outside with her children. DeBert started to "video record [the group] while narrating," " 'Look at these homophobic gay-bashers. I am a gay woman, and they just mess with me because I am gay.' " According to Robyn, it got to a point where they could not "just sit without her approaching" to say something or do something.

3

A neighbor, Carla Kornder,[3] testified that Robyn and her husband were often outside using their fire pit next to the parking area, and barbecuing with their children, and so it was difficult for them to avoid incidents with DeBert. In one incident, Kornder saw Robyn sitting in her chair when DeBert arrived driving her vehicle. DeBert started to back up toward an area where Robyn was sitting, while yelling out of her car, " 'I'm backing up. You better move. I'm backing up. I can't see you. I'm backing up.' " DeBert then hit Robyn with her car—"[n]ot hard or anything, but a bump . . . ." Kornder went to check on DeBert, while DeBert remained in her vehicle. DeBert "purposefully started up her car again so that she would exhaust us out because we were right behind her . . . car."

After this story was told, Robyn elaborated about another incident a week prior to the backing-up incident. One day, Robyn was sitting in her chair, when DeBert "pulled up to back up to my chair. She yelled out her window, 'You better be a grown-up and move, or I'm going to run you over.' "

DeBert indicated that she had a video that she had sent to the court clerk that she wanted to play for the court. The video was then played in open court. The court interrupted the video and asked Robyn and DeBert to describe what happened before the video recording. Robyn stated she had put up a sign stating, " 'Please don't park here. Please don't block the garage.' " Robyn explained on the day depicted in the video, DeBert arrived, got out of her vehicle, moved the sign, and parked where the sign had been located. DeBert disagreed with Robyn's recollection, stating the sign fell over on its own as she was backing up, perhaps "because [of] the wind." The video was eventually played to its conclusion.

---

[3] DeBert asserts that Kornder "was not sworn in as a witness." However, the transcript of the hearing reflects that at the beginning of the hearing, the trial judge instructed Robyn, DeBert, and "any other potential witnesses in the courtroom" to stand and raise their hands to be sworn by the clerk.

DeBert then indicated that there was another video depicting a parking incident. The video was played in open court. DeBert stated that some things in the video could not be heard, and that if the court turned up the volume "very loudly and listen[ed] to it," the video would reflect Robyn telling Kornder, " 'We now can restrain [DeBert].' " According to DeBert, "[t]hey were planning on how to restrain me."

DeBert then indicated that there was another video, this one reflecting aspects of the backing-up incident. DeBert explained that on that evening, she came home, drove into the parking area, and found two empty chairs. As she was backing up, she heard a sound near the back of her car. DeBert got out and found Robyn had run outside, "thrown a chair against the back of [the] car," and "sat in the [other] chair." DeBert explained that the video showed Robyn sitting in the chair calling 911 to say she was run over by a car. DeBert claimed that Robyn concocted the incident "claiming that she got ran over" so "[s]he could get [DeBert] served" with a restraining order.

DeBert then played another video for the court. However, the court interrupted it, stating that the video appeared to involve a period of time when DeBert was talking to a sheriff's deputy and was thus not probative. DeBert played another video for the court, but the court interrupted and indicated the video was not relevant. The court stated that "[t]his is the time when we're going to watch a video if there's anything probative, but so far we haven't seen anything probative." DeBert played yet another video. The court again interrupted, stating that the video appears to be "audio of you giving commentary" and therefore it was not probative. The court then stated that DeBert had one more opportunity to play a relevant video. DeBert replied stating that she had intended to show the videos to demonstrate that her neighbors had actually initiated the incidents. The court replied, "So you have apparently chosen not to play any more video[s]."

The trial court then heard additional statements from DeBert, who reiterated that her neighbors had created a problem that did not really exist and then called the authorities. Robyn then presented photographs related to the incidents to the court.

After the conclusion of the hearing, the trial court stated it was issuing a permanent restraining order for three years: "I find clear and convincing evidence that unlawful harassment by Ms. DeBert has occurred, and clear and convincing evidence that the unlawful harassment is likely to continue unless the restraining order is issue[d]."

DeBert thereafter filed a request to modify or terminate the restraining order. At a subsequent hearing, DeBert asserted that the trial court did not properly consider the video evidence that she presented at the prior hearing. DeBert urged the court to rewatch the video in "slow motion," though emphasized that even at "regular speed" the video evidence clearly showed the premise of Robyn's complaint to be false.

The trial court denied the request to modify or terminate the restraining order.[4] The court disputed DeBert's assertion that the court "had misinterpreted video evidence that was previous submitted." The court stated it "did not rely on video evidence in reaching its determination at the last hearing. [¶] So reanalyzing the video evidence is not necessary. And it is not a basis for the Court to modify or terminate the restraining order."

DeBert timely appealed.

## II. Discussion

### A. *Civil Harassment Restraining Order*

DeBert argues that there was insufficient evidence to justify issuance of a permanent restraining order. Robyn did not file a brief in this case.

### 1. *Standard of Review*

Under section 527.6, subdivision (a)(1), "[a] person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after

---

[4] The trial court, providing only the case number and not the name, also took judicial notice of another case (Super. Ct. Santa Cruz County, 2021, No. 21CV00252), in which a judgment was entered ordering DeBert to vacate the subject premises because she had been evicted.

6

hearing prohibiting harassment as provided in this section." "Upon filing a petition . . . the petitioner may obtain a temporary restraining order," which may be issued "with or without notice, based on a declaration that, to the satisfaction of the court, shows reasonable proof of harassment of the petitioner by the respondent, and that great or irreparable harm would result to the petitioner." (§ 527.6, subd. (d).) A hearing shall be held within 21 days, or if good cause appears to the court, within 25 days from the date that a petition for a temporary restraining order is granted or denied. (§ 527.6, subd. (g).)

Section 527.6, subdivision (b)(3) defines " '[h]arassment' " as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

" 'Credible threat of violence' " is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety, or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

" 'Unlawful violence' " is defined as "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not include lawful acts of self-defense or defense of others." (§ 527.6, subd. (b)(7).)

At the hearing on a petition under section 527.6, "the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

When addressing a claim that the evidence does not support a finding made under the clear and convincing standard of proof, an appellate court must consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could

7

have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) " 'But whether the facts, when construed most favorably in [petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' " (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

### 2. *Substantial Evidence Supports the Permanent Restraining Order*

In this case, Kornder testified to an incident in which DeBert knowingly backed her vehicle up toward Robyn while Robyn sat in her chair, ultimately striking her. Robyn testified that DeBert had promised to do this a week before it happened, and that she indeed followed through on her threat. Robyn also testified to a pattern of behavior on DeBert's part, which included parking in such a way as to make it difficult to move her vehicle, physical and verbal confrontations, and intimidation, all leading to substantial emotional distress. This conduct constituted unlawful violence, a credible threat of violence, and conduct that would lead to a reasonable person to suffer substantial emotional distress. The breadth and nature of the incidents described at the hearing more than satisfied the statutory definition of harassment.

In her brief, DeBert contends that the "precipitating incident [involving the no parking sign] . . . appears to have been instigated by Robyn."[5] This contention, however, was the subject of the hearing. The parties presented conflicting testimony about the dispositive issue of whether DeBert had harassed Robyn within the meaning of section 527.6. In finding a permanent restraining order warranted, the trial court impliedly resolved this credibility conflict in favor of Robyn. It is " ' "[the trial] court's province to resolve conflicts." ' " (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1049.)

---

[5] DeBert does not address any of the other incidents or evidence adduced at the hearing.

8

We do not " 'resolve conflicts in the evidence, reweigh the evidence, or assess the credibility of witnesses.' " (*Ibid*.) Rather, we interpret the facts in the light most favorable to the prevailing party. Under that standard, we decide there is substantial evidence supporting the trial court's finding by clear and convincing evidence DeBert engaged in unlawful harassment under section 526.7, subdivision (b)(3) against Robyn.

### B. *Incomplete Record*

DeBert asserts that in designating the record on appeal, she requested that the appellate record include two videos that were played at trial. She notes that "the record on appeal does not include these videos," and asserts that "[t]he current whereabouts of these videos is simply unknown." DeBert thus contends that the "inability to review the record deprives [her] of her substantial rights and the right to an appeal." We disagree.

"It is axiomatic it is the appellant's responsibility to provide an adequate record on appeal." (*Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1003, fn. 1.) When the record in a case is incomplete, a party may bring a motion to augment the record. "A party must attach to its motion a copy, if available, of any document or transcript that it wants added to the record." (Cal. Rules of Court, rule 8.155(a)(2).) Regarding omissions from a previously designated record, "[i]f a clerk or reporter omits a required or designated portion of the record, a party may serve and file a notice in superior court specifying the omitted portion and requesting that it be prepared, certified, and sent to the reviewing court. The party must serve a copy of the notice on the reviewing court." (*Id.*, rule 8.155(b)(1).)

Here, there is no indication that DeBert ever served a letter of omission on the trial court, as required under California Rules of Court, rule 8.155(b)(1). Nor is there any indication that she attempted to augment the record under California Rules of Court, rule 8.155(a)(2). According to the transcript of the hearing, these videos were apparently sent via e-mail by DeBert to the court clerk. Given that she sent and possessed the videos, and is relying on the videos to claim error, it was her responsibility to follow the

9

procedures for correcting a record omission, and, if necessary, augmenting the record. Consequently, we find DeBert's argument related to an incomplete record unavailing.

### III. Disposition

The order is affirmed.

_____
                                            Wilson, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Danner, J.

<u>Robyn v. DeBert</u>
H049049